UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RONALD J. POMYKALA, individually
and on behalf of Class Members,
                                      Plaintiff

v.

PCFS MORTGAGE RESOURCES
DIVISION OF PROVIDENT BANK and
PROVIDENT FINANCIAL GROUP,
INC.,
                                      Defendants

**Civil Action No. 04-11956 RWZ**

## PLAINTIFF'S MOTION FOR LEAVE
## TO FILE FIRST AMENDED COMPLAINT

Now comes the plaintiff and moves for leave to file the annexed First Amended Complaint.

The original Complaint was filed in the state court and based on new information obtained since the

original filing, the plaintiff has opted to correct its Complaint by filing said First Amended

Complaint.

Respectfully submitted,

RONALD J. POMYKALA, Individually and
on Behalf of Class Members, Plaintiff
By his Attorney

/s/ Evans J. Carter
Evans J. Carter, Esq. (BBO # 076560)
Hargraves, Karb, Wilcox & Galvani, LLP
550 Cochituate Road - Post Office Box 966
Framingham, MA  01701-0966
(508) 620-0140

DATED: January 13, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD J. POMYKALA, individually and on behalf of Class Members, <br>            Plaintiff <br><br> v. <br><br> PCFS MORTGAGE RESOURCES DIVISION OF PROVIDENT BANK and PROVIDENT FINANCIAL GROUP, INC., <br>            Defendants | **Civil Action No. 04-11956 RWZ** |

## PROPOSED
## FIRST AMENDED COMPLAINT

## I.  Nature of the Action

1.      Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated, specifically, consumers who have had their residential mortgage loans serviced by PCFS Mortgage Resources Division of Provident Bank, which is owned, controlled and directed by Provident Financial Group, Inc.  This complaint seeks rescission and restitution, multiple damages and attorney's fees pursuant to G.L. Chapter 93A, Section 9, and injunctive relief as the defendants have violated 21 USC §§ 2601-17 (RESPA), Regulation X, 24 CFR Part 3500 (Mortgage Services) and 15 USC § 1692 (FDCPA). The plaintiff is seeking in this compliant to certify a nationwide class action.  Massachusetts has jurisdiction over this action as the defendants do business here and filed numerous complaints in the Trial Court. .

## II.  Jurisdiction

2.      The court has subject matter jurisdiction as the original complaint was removed by the defendants from the Plymouth Superior Court Division of the Massachusetts Trial  Court.

## III.  Venue

3.      Venue is proper in the District of Massachusetts under U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because of at least one of the defendants transacts business in this District.

## IV.  Parties

4.      The plaintiff, Ronald J. Pomykala, resides at 15 Cushman Street, Plymouth, Plymouth County, Massachusetts.

5.      The defendant, PCFS Mortgage Resources Division ("PCFS") of Provident Ban ("PB"), is a banking corporation having its offices at 4221 International Parkway, Suite 150, Atlanta

Georgia and PCFS conducts trade or commerce in Massachusetts so as to come within the purview of G.L. Chapter 93A. PB has approximately 65 branch offices in southwestern Ohio and northern Kentucky and has a market capitalization of approximately $1.7 billion.

6. The defendant, Provident Financial Group, Inc. ("PFG"), is a banking corporation with its executive offices located at 1 East 4th Street, Cincinnati, Ohio. PFG is controlled by Carl Linden and American Financial Group, Inc. PFG conducts trade or commerce in Massachusetts so as to come within the purview of G.L. Chapter 93A.

7. PFG and PB are in the business of purchasing residential home mortgages that were generated by others, such as mortgage brokers and mortgage companies, who actually arranged to close the consumer mortgage loans and they then assign them to PFG and/or PB who then uses the services of their wholly owned service company, PCFS, to service the mortgage loans.

## IV.   Factual Allegations

8. On or about January 6, 2003, the plaintiff purchased his home located at 15 Cushman Street, Plymouth, Plymouth County, Massachusetts, and obtained a mortgage loan from New Century Mortgage Corporation in amount of $455,400.00. Monthly payments in an amount of $3,184.23 commenced on February 1, 2003. A copy of the Settlement Statement is annexed hereto and marked as Exhibit A and a copy of the Promissory Note is annexed hereto and marked as Exhibit B.

9. This mortgage loan was assigned by an affiliate of New Century Mortgage Corporation (The Any Loan Company) to a third-party, effective on March 2, 2003, and the defendants started to service the mortgage loan on or about that date and the plaintiff, from that date on, sent his monthly mortgage payments to PCFS.

10. For example, the October mortgage payment in an amount of $3,184.23 was received by PCFS on October 14, 2003 at 8:30 a.m. in Cincinnati, Ohio, but PCFS, as a matter of practice and/or policy, did not credit said mortgage payment on the date received but waited until October 21, 2003 to credit and apply said payment.

11. Also, the plaintiff's September payment was paid timely but not credited timely so a late charge in an amount of $95.00 was wrongfully assessed to boost PCFS's cash flow. However, in this instance, on September 23, 2003, Tammy Cole, a PCFS collection supervisor, credited and/or removed said late charge after the plaintiff requested this as PCFS knew there was no basis to assess any late charges..

12. On October 15, 2003, the plaintiff received a form "courtesy reminder," dated 10/13/03, which failed to account for his September mortgage payment which is a policy and/or common practice by PCFS as PCFS's records showed that the September payment as being applied on September 17, 2003.

13. The plaintiff's December, 2003 payment was received by PCFS on December 8, 2003 and apparently lost again. This is a matter of policy and/or practice by PCFS.

14. The plaintiff sent a replacement payment that was received by PCFS on December 11, 2003 but not applied so on December 23, 2003, the plaintiff made the payment on line electronically and the account should have been paid through the December, 2003 payment but PCFS refused to accept this electronic payment. Accordingly, on January 6, 2004, the December and January payments were paid again by the plaintiff to avoid further problems. PCFS's records show the December payment being credited on December 26, 2003.

15. As of January 5, 2004, PCFS's records showed the plaintiff's account as having a balance of $9,552.69 but it should only have been $3,184.23 (the January 2004 current payment).

16. By letter dated February 13, 2004, the plaintiff, by his attorney, demanded a full accounting but to date, none has been received.

17. On March 24, 2003, the principal balance of the mortgage loan was shown as $454,721.93 in the defendant's records but this is in error. On line 901 of the Settlement Statement (Exhibit A) interest was collected, in advance, of $467.90 (from 1/6/03-2/1/03 but the form says for 1/6/03-1/1/03 sic). The first payment was due on 2/1/03 and was paid (Check No. 6414) in an amount of $3,184.23 (which was an overpayment because interest had been prepaid). Also, on 3/5/03 (Check No. 6447), the second payment for $3,184.23 was paid. No credit was given for said $467.90 prepayment of interest which should have reduced the principal balance of the Note.

18. The refinancing closing attorney paid to defendants $461,929.73 (payoff) that was received by PCFS on he morning of February 18, 2004 and only $92.62 was refunded as being overpaid. At least one (1) payment of $3,188.23 was not given credit for.

19. No real estate tax escrow account was established but the following was done in error:

   a. Line 809 of the Settlement Statement shows $78 was collected for a tax service fee (no tax service was utilized); and

   b. $92.62 was refunded with the only explanation being "real estate tax escrow account," but there was no tax escrow account.

20. The form 1098 summary provided by the defendant was, again, incorrect because it failed to account for the $467.90 of prepaid interest and also the additional payment.

21. PCFS also wrongfully collected unilateral fees charged and not agreed to or disclosed in advance, such as:

   a. Release fee: $15.00 (2/12/04 and 2/17/04 letters) (copies of these letters are annexed hereto and collectively marked as Exhibit C);

   b. Fees (unexplained): $15.00 (12/12/04 letter) and $30.00 (2/17/04 letter); and

   c. Check by phone fee: $25.00 (5/13/03 but not utilized).

22    The 2/17/04 payoff letter states that if paid by 2/29/04, the amount due is $461,929.73. Since it was paid off on 2/18/04, there should have been a deduction of $92.64 x 11 or $1,019.04. UPS delivered the payoff on the morning on 2/18/04 but consistent with the practices of PCFS, it was not applied until the following day, 2/19/04. PCFS's loan history statement also shows a payoff of $454,721.93 but $461,929.73 was paid. (A copy of PCFS's loan history statement and IRS Form 1098 Summary are annexed hereto and collectively marked as Exhibit D.

22.    By the above stated actions, as a matter of policy and/or practice, PCFS would use unreasonable and/or unfair servicing practices efforts to try and sway mortgagors, such as the plaintiff, into prepaying their mortgage loans, thereby being able to collect a prepayment penalty in order to obtain additional "windfall" profits.

23.    The plaintiff, as a result of some of the above-stated unfair trade practices and/or policies of defendants, requested to pay off his mortgage loan and sought a waiver of the prepayment penalty, in an amount of $8,460.04, which waiver was denied.

24.    Accordingly, on February 18, 2004, the plaintiff caused said mortgage loan to be paid off under protest and demanded a refund of the $8,460.04 prepayment penalty and of the February payment in an amount of $3,184.23 but the defendants refused to honor said demand. The plaintiff is also owed the $467.90 that he paid as prepayment of interest and unauthorized fees assessed and collected.

## COUNT I

### (12 USC §§ 2601-17 RESPA and Regulation X
### 24 CFR Part 3500, Mortgage Servicing)

The plaintiff incorporates by reference and realleges paragraphs 1 through 25, inclusive, as if fully set forth herein.

25.    By the above-stated actions, the defendants have breached the provisions of 12 USC §§ 22601-17 (RESPA) and Regulation X, 24 CFR Part 3500 (mortgage servicing) and, as a result, the plaintiff and the other Class Members have incurred monetary damages.

## COUNT II

### (Fair Debt Collection Protection Act (15 USC § 1692 et seq.)

The plaintiff incorporates by reference and realleges paragraphs 1 through 26, inclusive, as if fully set forth herein.

26.    The defendants have violated the FDCPA by the following conduct:

    a.    Attempting to collect amounts not permitted by law (15 USC § 1692f(1));

b.  Using unfair and unconscionable collection methods (15 USC § 1692f);

c.  Giving a false impression of the character, amount, or legal status of the alleged debt (15 USC § 1692e(2));

d.  Using false or deceptive collection methods (15 USC § 1692e(5)); and

e.  Failing to state "the amount of the debt" as required by 15 USC § 1692g(1)

28.  The plaintiff and class members of the FDCPA class are entitled to relief under the FDCPA, including damages and a declaratory judgment that the defendants' conduct violates the FDCPA.

## COUNT III

### (Credit Defamation)

The plaintiff incorporates by reference and realleges paragraphs 1 through 28 inclusive, as if fully set forth herein.

29.  By the above-stated actions and/or inactions, the defendants have wrongfully adversely affected, defamed and damaged the plaintiff's credit rating and standing as well as other class members.

## COUNT IV

### (Breach of Contract and/or Third-Party Beneficiaries)

The plaintiff incorporates by reference and realleges paragraphs 1 through 29, inclusive, as if fully set forth herein.

30.  By the above-stated actions, the defendants have breached the agreements with the plaintiff whereby the plaintiff is a direct party and/or third-party beneficiary thereof, which has caused the plaintiff and the other class members  substantial monetary damages.

## COUNT V

### (Breach of Covenant of Good Faith and Fair Dealing)

The plaintiff incorporates by reference and realleges paragraphs 1 through 30, inclusive, as if fully set forth herein.

31.  Defendants owed to the plaintiff and the class members a covenant of good faith and fair dealing and by the above-stated  actions, the defendants breached the same which caused damages to the plaintiff and the other class members.

## COUNT VI

### (Unjust Enrichment)

The plaintiff incorporates by reference and realleges paragraphs 1 through 31, inclusive, as if fully set forth herein.

32.  This is a class action claim for the recovery of monies by which the defendants have been unjustly enriched.

33.  By committing unfair and deceptive mortgage servicing actions, the defendants were unjustly enriched and are liable to account and pay such amounts to the plaintiff and the other class members.

## COUNT VII

### (Negligence)

The plaintiff incorporates by reference and realleges paragraphs 1 through 33, inclusive, as if fully set forth herein.

34.  The defendants were negligent with regard to their handling of the plaintiff and the other class members' mortgage loan accounts.

35.  As a direct result of said negligent actions by the defendant, the plaintiff and the other class members have incurred monetary damages.

## COUNT VIII

### (Intentional Misrepresentation/Common Law Fraud)

The plaintiff incorporates by reference and realleges paragraphs 1 through 35 inclusive, as if fully set forth herein.

36.  The defendants knowingly and intentionally made material and false representations in their monthly mortgage statements to the plaintiff and class members as to when payments were received with knowledge of their falsity or reckless disregard for their truth, with the intention that the plaintiff and class members act upon said misrepresentations to their detriment. The plaintiff and the class members accepted such representations and acted in justifiable reliance upon those misrepresentations to their detriment, as millions of dollars of interest was wrongfully charged or earned by the defendants.

37.  The defendants have represented to the plaintiff and the other class members that they were entitled to collect various loan charges, such as late charges and user fees, that were not legally due and owing.

38.    The defendants' representations concerning the right to collect such fees and charges were false.

39.    The defendants knew or should have known that such representations were false.

40.    The plaintiff and the other class members relied on the defendants' false representations concerning its entitlement to collect such fees and charges and the plaintiff and the other class members did pay such fees and charges, to their detriment.

41.    The plaintiff and the other class members' reliance was reasonable or justifiable in the circumstances.

42.    The plaintiff and the other class members have suffered damages.

## COUNT IX

### (Disgorgement of Wrongful Profits and for an Accounting)

The plaintiff incorporates by reference and realleges paragraphs 1 through 42 inclusive, as if fully set forth herein.

43.    The defendants have engaged in unfair mortgage servicing practices.

44.    The defendants have collected monies that were not due and owing under applicable contract law because the contract or other applicable law does not permit them to collect such fees and charges.

45.    This claim is for disgorgement of the unjust enrichment to the defendants.

46.    The plaintiff and the other class members have suffered monetary losses by virtue of the defendants' conduct and they request a full accounting of all revenues (and interest thereon) and costs incurred as well as the disgorgement of all profits earned from the said funds.

## COUNT X

### (Unfair Trade Practices, G.L. Chapter 93A)

The plaintiff incorporates by reference and realleges paragraphs 1 through 46 inclusive, as if fully set forth herein.

47.    By the above-stated actions, the defendants have committed unfair trade practices in violation of General Laws, Chapter 93A, Section 9, as well as violating numerous rules and regulations and statutes.

48.    The above-stated actions were done knowingly, willfully, intentionally and/or recklessly by the defendants.

49. The defendants each conduct trade or commerce in Massachusetts so as to come within the purview of G.L. Chapter 93A.

50. On or about January 12, 2004, the plaintiff caused a so-called G.L. Chapter 93A demand letter to be served on the defendants. A copy of said letter is annexed hereto and marked as Exhibit E.

51. On or about January 29, 2004, an amendment to the demand letter was caused to be served on the defendants, a copy of which is annexed hereto and marked as Exhibit F.

52. On or about February 11, 2004, defendants' legal counsel responded to said demand letters and a copy of he responsive letter is annexed hereto and marked as Exhibit G.

53. On or about February 27, 2004, a second amendment to the demand letter was served on the defendants. A copy of his letter is annexed hereto and marked as Exhibit H.

54. As a direct result of the defendants unfair trade practices, as above-stated, the plaintiff and other class members have incurred monetary damages plus interest, costs and reasonable attorney's fees.

## COUNT XI

### (Class Action Certification)

The plaintiff incorporates by reference and reallege paragraphs 1 through 54 inclusive, as if fully set forth herein.

55. The plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all persons and entities who have or had mortgage loans served by the defendants (collectively "Class" OR "Class Members").

56. Based on conversations with some mortgage brokers, it is estimated that there are probably in excess of 2,000 Class Members in Massachusetts alone many more Class Members throughout the United States.

57. The plaintiff's claims are typical of the claims of the Members of the Class. The plaintiff and all members of the Class sustained damages as a result of the wrongful conduct for which the defendants are responsible as described in this complaint.

58. The plaintiff will fairly and adequately protect the interests of the Members of the Class and he has retained counsel competent and experienced in class action litigation.

59. A class action is superior to other available methods for the fair and effect adjudication of this controversy. The damages suffered by many individual Class Members are relatively small, albeit significant, and many, especially those who closed down, do not have the financial ability to proceed individually. Thus, the expense and burden of individual litigation makes

it impractical for many Class members individually to seek redress for the wrongful conduct alleged in this action.

60.    Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class.  Among the questions of law and fact common to the Class are:

    a.    Whether the defendants breached their obligations and duties owed in servicing home mortgage loan accounts;

    b.    Whether the defendants have breached state and federal statutes and regulations, such as 21 USC §§ 2601-17 (RESPA), Regulation X, 24 CFR Part 3500 (Mortgage Servicing) and 15 USC § 1629 (FDCPA);

    c.    Whether the defendants have committed unfair trade practices in Massachusetts and the other states which now all have so-called baby F.T.C. unfair trade practices statutes;

    d.    Whether the defendants properly and timely credited mortgage payments made on the day received or wait to give such credit;

    e.    Whether the defendants wrongfully assess and collect unilaterally imposed fees and charges;

    f.    Whether the defendants give full and proper credit for payments made on mortgages and prepaid interest paid; and

    g.    Whether the defendants executed and delivered true and accurate IRS Form 1098 summaries sent to home mortgagors.

61.    The plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class Action.

62.    Certifying this as a class action would resolve these issues for all potential plaintiffs without the necessity of filing individual lawsuits.  Additionally, class certification in this matter would not impose any significant burden upon the Court.

63.    In this case, the certification of the class is appropriate where the it would not complicate or delay disposition of the case and the defendants would suffer no prejudice as a result of certification and where certification would assure the class members that the defendants would not evade its responsibility in implementing any Court orders.

64.    The names and addresses of all Class Members are available from the defendants and notice will be provided to Class Members via first-class mail, using techniques and a notice approved by this court.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff, on his own behalf and on the behalf of others similarly situated (Class Members) prays for judgment as follows:

1.    Declare this action to be a Class Action.

2.    Award to the plaintiff and to all Class Members compensatory damages in an amount which may be proven at trial and actual and statutory damages, together with prejudgment interest at the maximum rate allowed by law.

3.    Award to the plaintiff and to all Class Members treble damages as well as restitution based on unjust enrichment and disgorgement of funds unjustly obtained.

4.    Award to the plaintiff his costs and expenses incurred in this action, including reasonable attorney, accountant and expert fees.

5.    Award to plaintiff and to all Class Members such other and further relief as this court may deem meet, just and proper.

THE PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

RONALD J. POMYKALA, Plaintiff
By his Attorney


Evans J. Carter, Esq. (BBO # 076560)
Hargraves, Karb, Wilcox & Galvani, LLP
550 Cochituate Road
P.O. Box 966
Framingham, MA 01701-0966
(508) 620-0140

Dated:   January 14, 2004

## SCHEDULE OF EXHIBITS

A.     Settlement Statement

B.     Promissory Note

C.     2/12/04 and 2/17/04 payoff letters

D.     PCFS loan history and IRS Form 1098 Summary

E.     1/12/04 G.L. Chapter 93A demand letter

F.     1/29/04 amendment to demand letter

G.     2/11/04 letter of Defendants' counsel

H.     2/27/04 second amendment to demand letter

I.     Defendants' loan history summary

**A.** **Settlement Statement**

**U.S Department of Housing And Urban Development**

OMB Approval No. 2502-0265

**B. Type of Loan**

| 1 ○ FHA | 2 ○ FmHA | 3 ⦿ Conv. Unins. | 6. File Number: 7296 | 7. Loan Number: 0000779213 | 8. Mortgage Ins. Case No.: |
|---|---|---|---|---|---|
| 4 ○ VA | 5 ○ Conv. Ins. | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. Name and Address of Borrower:**
Ronald J. Pomykala, 109 Sandwich Street, Plymouth, MA 02360

**E. Name and Address of Seller:**
Tiziana Todde Miele, 15 Cushman Street, Plymouth, MA 02360

Seller's TIN#:

**F. Name and Address of Lender:**
The Anyloan Company
340 Commerce  Suite 200
Irvine, CA, 92602

**G. Property Location:**
15 Cushman Street
Plymouth, MA 02360

**H. Settlement Agent:**    Joanne P. Duffy

Place of Settlement:    345 Court Street, Plymouth, MA 02360

City/Cnty of Settlement: Plymouth        Plymouth        January 6, 2003

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | $506,000.00 | 401. Contract sales price | $506,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $13,219.49 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes        to | | 406. City/town taxes        to | |
| 107. County taxes        to | | 407. County taxes        to | |
| 108. Assessments        to | | 408. Assessments        to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | $519,219.49 | **420. Gross Amount Due To Seller** | $506,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | $5,000.00 | 501. Excess deposit (see instructions) | $2,500.00 |
| 202. Principal amount of new loan(s) | $455,400.00 | 502. Settlement charges to seller (line 1400) | $38,465.36 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1  Mortgage Electronic Registration Syst | $262,714.93 |
| 205. | | 505. Payoff 2 | |
| 206. | | 506. final water          toPlymouth | $588.95 |
| 207. | | 507.        to | |
| 208. | | 508.        to | |
| 209. | | 509.        to | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    1/01/2003  to  01/05/2003 | $52.98 | 510. City/town taxes    1/01/2003  to  01/05/2003 | $52.98 |
| 211. County taxes        to | | 511. County taxes        to | |
| 212. Assessments        to | | 512. Assessments        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $460,452.98 | **520. Total Reduction Amount Due Seller** | $304,262.22 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | $519,219.49 | 601. Gross amount due to seller (line 420) | $506,000.00 |
| 302. Less amount paid by/for borrower (line 220) | ($460,452.98) | 602. Less amount paid by/for seller (line 520) | ($304,262.22) |
| **303. CASH** ⦿ FROM ○ TO  **BORROWER:** | $58,766.51 | **603. CASH** ⦿ TO ○ FROM  **SELLER:** | $201,737.78 |

**EXHIBIT**

tabbies

*4*

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I and on line 401 (or if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service.
If you are required to file a return, a negligence penalty or other sanction will be imposed on you, if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2110. Sale or Exchange of Principal Residence, for any gain, with your income tax return: for other transactions, complete the applicable parts of Form 4797, Form 8252 And/or Schedule D (Form 1040). You are required by law to provide [see box H] with your correct taxpayer identification number. If you do not provide [see box H] with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury. I certify that the number shown on this statement is my correct taxpayer identification number.

_____

_____
Seller's Signature

**L. Settlement Charges**

| 700. Total Sales/Broker's Commission based on price | $506,000.00 @ | % = $36,000.00 | Paid From Borrowers Funds at Settlement | Paid From Sellers Funds at Settlement |
|---|---|---|---|---|
| Division of Commission (line 700) as follows: | | | | |
| 701. $36,000.00 to New England Commercial Real Estate | | | | |
| 702. to | | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | $36,000.00 |
| **800. Items Payable in Connection With Loan** | | | | |
| 801. Loan Origination fee | 2 % | National City Mortgage | POC: | $9,108.00 | |
| 802. Loan Discount | % | | POC: | | |
| 803. Appraisal Fee | to | National City Mortgage | POC: $275.00 | | |
| 804. Credit Report Fee | to | National City Mortgage | POC: | $16.50 | |
| 805. Underwriting Fee | to | The Anyloan Company | POC: | $300.00 | |
| 806. Document Fee | to | The Anyloan Company | POC: | $200.00 | |
| 807. | to | | POC: | | |
| 808. Flood Certification Fee | to | The Anyloan Company | POC: | $11.20 | |
| 809. Tax Service Fee | to | The Anyloan Company | POC: | $78.00 | |
| 810. | to | | POC: | | |
| 811. | to | | POC: | | |
| 812. | to | | POC: | | |
| 813. | to | | POC: | | |
| 814. yiels service premium (4554.00 pd by Anyl to National City Mortgage | | | POC: | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | | |
| 901. Interest from 1/06/2003 to 1/01/2003 @ 93.58 / day -5 Days | | | ($467.90) | |
| 902. Mortgage insurance premium for mo. to | | | | |
| 903. Hazard insurance premium for 1 yrs. to Quincy Mutual (1186 pd to 01/06/04) | | | | |
| 904. Flood insurance yrs. to | | | | |
| 905. Pay 2/01/03 Plymouth tax bill | | | $1,336.89 | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | $0.00 | |
| 1007. | months @ | per month | | |
| 1008. Aggregate Accounting Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee to | | | | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to Attorney Joanne P. Duffy | | | $600.00 | |
| (Includes above items Numbers: 1101, 1103, 1105 | | ) | | |
| 1108. Title insurance to First American Title Insurance Company | | | $1,769.80 | |
| (Includes above items Numbers: To JPD $1,061.88 To TI $707.92 | | ) | | |
| 1109. Lender's coverage $455,400.00 L Prem: $1,140.00 | | | | |
| 1110. Owner's coverage $506,000.00 O Prem: $629.80 | | | | |
| 1111. Obtain MLC to Plymouth | | | $25.00 | |
| 1112. Mortgage discharge fee to Attorney Joanne Duffy | | | | $50.00 |
| 1113. Title Insurance Commission to Title Agent to | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees: Deed $47.00 ; Mortgage $54.00 ; Releases $32.00 | | | $101.00 | $32.00 |
| 1202. City/county tax/stamps: Deed ; Mortgage | | | | |
| 1203. State tax/stamps: Deed $2,307.36 ; Mortgage | | | | $2,307.36 |
| 1204. to | | | | |
| 1205. Record Municipal Lien to Plymouth County | | | $16.00 | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey to C & S Engineering | | | $125.00 | |
| 1302. Pest inspection to | | | | |
| 1303. Mortgage Payoff Fees to Fed Ex | | | | $16.00 |
| 1304. to | | | | |
| 1305. to | | | | |
| 1306. to | | | | |
| 1307. to | | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502 Section K)** | | | $13,219.49 | $38,405.36 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrowers _____    Sellers _____

Ronald J. Pomykala _____    Tiziana Todde Miele _____

_____    _____

_____    _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent _____    Date    January 6, 2003

**2 YEAR RATE LOCK**

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| **January 6, 2003** | **PLYMOUTH** | **MASSACHUSETTS** |
|---|---|---|
| [Date] | [City] | [State] |

**15 CUSHMAN STREET**    , PLYMOUTH, MASSACHUSETTS 02360
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **455,400.00**                (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

**The Anyloan Company**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **7.5000**          %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on    **February 1, 2003**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **January 1, 2033**                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **340 Commerce, Suite 200**
**Irvine, CA  92602**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $   **3,184.23**           . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -**
**Single Family - Fannie Mae UNIFORM INSTRUMENT**

VMP®-838N (0005)          Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4          Initials: _____



EXHIBIT
**B**



**0000779213**

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **January** **2005**, and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and One-Half** percentage points ( **5.5000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.0000** % or less than **7.5000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half** percentage point(s) ( **1.500** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **14.5000** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**0000779213**

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**0000779213**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
RONALD J. POMYKALA        -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____                            *[Sign Original Only]*
Witness - Joanne P. Duffy

**0000779213**

Loan Number   0000779213

**PREPAYMENT RIDER**
ADJUSTABLE RATE LOAN - MASSACHUSETTS

This Prepayment Rider is made this 6th   day of   January, 2003
and is incorporated into and shall be deemed to amend and supplement the Promissory
Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date given by the undersigned (the "Borrower") to secure
repayment of Borrower's Note to
The Anyloan Company

(the"Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the
provisions of the Note and/or Security Instrument, the provisions of this Rider shall
prevail over and shall supersede any such inconsistent provisions of the Note and/or
Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the
Borrower and Lender further covenant and agree as follows:

**5. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due. A
payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as Prepayment if I have not made all the monthly payment due under this
Note.

Except as provided below, I may make a Full Prepayment or Partial
Prepayments without paying any Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However,
the Note Holder may apply my Prepayment to the accrued and unpaid interest on the
Prepayment amount before applying my Prepayment to reduce the Principal amount
of this Note. If I make a partial Prepayment, there will be no changes in the due
dates of my monthly payments unless the Note Holder agrees in writing to those
changes. My partial Prepayment may reduce the amount of my monthly payments
after the first Change Date following my partial Prepayment. However, any
reduction due to my partial Prepayment may be offset by an interest rate increase.

However, if within the first   2   year(s) after the execution of the Security
Instrument I make a Full Prepayment, I will pay a prepayment charge subject to the
following limitations: (a) if I make a Full Prepayment, the prepayment charge will
not exceed the lesser of three (3) months' interest or the remaining balance of the
first year's interest; and (b) if I make a Full Prepayment for the purpose of
refinancing my loan with another financial institution, an additional payment not in
excess of three (3) months' interest will be required. In no event will such charge be
made if it violates state or federal law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Prepayment Rider.

RONALD J. POMYKALA

HCMC
ARM Prepay Rider - Massachusetts
RE-243 SCB  8894  3/21/02

February 12, 2004

RONALD J POMYKALA
15 CUSHMAN STREET
PLYMOUTH MA 02360-0000
Your Reference: mjd

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: 0000779213
RONALD J POMYKALA, SS#: 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
15 CUSHMAN STREET
PLYMOUTH, MA 02360-0000
Loan Type: Conventional  FHA/VA Case #:

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit. The payoff is subject to final audit when presented. Any overpayment or refunds will be mailed directly to the borrower. We will prepare the release of our interest in the property after all funds have cleared.

| | |
|---|---|
| Projected Payoff Date | 02/29/2004 |
| Principal Balance | $450,837.66 |
| Interest to 02/29/2004 | $2,593.86 |
| Fees | $ 15.00 |
| Prepayment Penalty | $8,453.21 |
| Release Fees | $ 15.00 |
| Funds owed by Borrower | $0.00 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $461,914.73 |
| Per diem | $ 92.64 |

The next payment due is 03/01/2004. Payments are made by Billing on a Monthly basis. The current interest rate is   7.5000% and the P & I payment is $3,184.23.   .

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

PCFS Mortgage Resources,
4221 International Parkway
Suite 150
Atlanta, GA 30354
(770) 909-7979
(866) 729-7237

EXHIBIT

C

```
                                            461,929.73  +
                                                92.64   ×
February 17, 2004                                  9.   =
                                               833.76   *
RONALD J POMYKALA
15 CUSHMAN STREET                                       -
781-331-6004
PLYMOUTH MA 02360-0000                 002...........
Your Reference: dxs                        461,095.97  *
```

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: 0000779213
RONALD J POMYKALA, SS#: 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
15 CUSHMAN STREET
PLYMOUTH, MA 02360-0000
Loan Type: Conventional   FHA/VA Case #:

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit. The payoff is subject to final audit when presented. Any overpayment or refunds will be mailed directly to the borrower. We will prepare the release of our interest in the property after all funds have cleared.

Projected Payoff Date                       02/29/2004

| | |
|---|---|
| Principal Balance | |
| Interest to 02/29/2004 | $450,837.66 |
| Fees | $2,593.86 |
| Prepayment Penalty | $ 30.00 |
| Release Fees | $8,453.21 |
| Funds owed by Borrower | $ 15.00 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $0.00 |
| | $461,929.73 |

Per diem                                    $ 92.64

The next payment due is 03/01/2004. Payments are made by Billing on a Monthly basis. The current interest rate is   7.5000% and the P & I payment is $3,184.23.

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

PCFS Mortgage Resources,
4221 International Parkway
Suite 150
Atlanta, GA 30354
(770) 909-7979
(866) 729-7237

PO1.doc
12/12/2002 1:51 PM

Loanhist.rpt
09/01/2004 2:36:05PM

Loan ID 000779213

Borrower Name
RONALD J POMYKALA

# PCFS Mortgage Resources
## Loan History Summary

Page #1

EXHIBIT
D

| Trans Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Assist Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/24/03 | 04/01/03 | New Loan | 0 | 0 | 454,721.93 | 454,721.93 | 454,721.93 | | | | | | 0.00 |
| 04/14/03 | 04/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 342.22 | 454,379.71 | 2,842.01 | | | | | 0.00 |
| 05/15/03 | 05/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 344.36 | 454,035.35 | 2,839.87 | | | | | 0.00 |
| 06/13/03 | 06/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 346.51 | 453,688.84 | 2,837.72 | | | | | 0.00 |
| 07/11/03 | 07/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 348.67 | 453,340.17 | 2,835.56 | | | | | 0.00 |
| 07/14/03 | 08/01/03 | Regular Payment | 0 | 1 | 3,184.23 | 350.85 | 452,989.32 | 2,833.38 | | | | | 0.00 |
| 07/15/03 | 08/01/03 | Regular Payment | 0 | 1 | (3,184.23) | (350.85) | 453,340.17 | (2,833.38) | | | | | 0.00 |
| 08/11/03 | 08/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 350.85 | 452,989.32 | 2,833.38 | | | | | 0.00 |
| 09/16/03 | 09/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 353.05 | 452,636.27 | 2,831.18 | | | | | 0.00 |
| 09/17/03 | 09/01/03 | Late Charge Asses | 0 | 0 | 95.53 | | 452,636.27 | | | | 95.53 | 95.53 | 0.00 |
| 09/24/03 | 10/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 355.25 | 452,281.02 | 2,828.98 | | | | 95.53 | 0.00 |
| 10/16/03 | 10/01/03 | Late Charge Waive | 0 | 6 | (95.53) | | 452,281.02 | | | | (95.53) | 0.00 | 0.00 |
| 10/16/03 | 10/01/03 | Late Charge Asses | 0 | 0 | 95.53 | | 452,281.02 | | | | 95.53 | 95.53 | 0.00 |
| 10/21/03 | 10/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 357.47 | 451,923.55 | 2,826.76 | | | | 95.53 | 0.00 |
| 10/21/03 | 10/01/03 | Late Charge Waive | 0 | 6 | (95.53) | | 451,923.55 | | | | (95.53) | 0.00 | 0.00 |
| 11/16/03 | 11/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 359.71 | 451,563.84 | 2,824.52 | | | | 0.00 | 0.00 |
| 11/18/03 | 11/01/03 | Late Charge Asses | 0 | 0 | 95.53 | | 451,563.84 | | | | 95.53 | 95.53 | 0.00 |
| 11/18/03 | 11/01/03 | Late Charge Waive | 0 | 6 | (95.53) | | 451,563.84 | | | | (95.53) | 0.00 | 0.00 |
| 12/16/03 | 12/01/03 | Regular Payment | 0 | 0 | (3,184.23) | (359.71) | 451,923.55 | (2,824.52) | | | | 0.00 | 0.00 |
| 12/22/03 | 12/01/03 | Unapplied Payment | 0 | 0 | 3,184.23 | | 451,923.55 | | | | | 0.00 | 0.00 |
| 12/26/03 | 12/01/03 | Unapplied Payment | 0 | 0 | (3,184.23) | | 451,923.55 | | | | | 0.00 | 0.00 |
| 12/26/03 | 12/01/03 | Unapplied Payment | 0 | 0 | 3,184.23 | | 451,923.55 | | | | | 0.00 | 0.00 |
| 02/26/03 | 12/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 359.71 | 451,563.84 | 2,824.52 | | | | 95.53 | 0.00 |
| 02/26/03 | 12/01/03 | Late Charge Waive | 0 | 6 | (95.53) | | 451,563.84 | | | | (95.53) | 95.53 | 0.00 |
| 01/02/04 | 12/01/03 | Regular Payment | 0 | 0 | 3,184.23 | 361.96 | 451,201.88 | 2,822.27 | | | | 0.00 | 0.00 |
| 01/02/04 | 12/01/03 | NSF Fee Assessme | 0 | 0 | 25.00 | | 451,201.88 | | | | | 0.00 | 0.00 |
| 01/07/04 | 12/01/03 | WebSite Pmt Fee P | 0 | 0 | 3.00 | | 451,201.88 | | | | | 0.00 | 0.00 |
| 01/08/04 | 12/01/03 | Unapplied Payment | 0 | 0 | 6,368.46 | | 451,201.88 | | | | | 0.00 | 0.00 |
| 01/08/04 | 01/01/04 | Regular Payment | 0 | 0 | (6,368.46) | | 451,201.88 | | | | | 0.00 | 0.00 |
| 01/29/04 | 01/01/04 | Unapplied Payment | 0 | 0 | 3,184.23 | | 451,201.88 | | | | | 0.00 | 0.00 |
| 01/29/04 | 02/01/04 | Regular Payment | 0 | 0 | 3,184.23 | | 451,201.88 | | | | | 0.00 | 0.00 |
| 01/28/04 | 02/01/04 | NSF Fee Waiver | 0 | 0 | (25.00) | | 451,201.88 | | | | | 0.00 | 0.00 |
| 02/06/04 | 02/01/04 | WebSite Pmt Fee W | 0 | 0 | 3.00 | | 451,201.88 | | | | | 0.00 | 0.00 |
| 02/06/04 | 02/01/04 | Payoff Fax Assess | 0 | 0 | (15.00) | | 451,201.88 | | | | | 0.00 | 0.00 |
| 02/10/04 | 02/01/04 | Regular Payment | 0 | 0 | 3,184.23 | 364.22 | 450,837.66 | 2,820.01 | | | | 0.00 | 0.00 |
| 02/17/04 | 03/01/04 | Fax Service Assess | 0 | 0 | (15.00) | | 450,837.66 | | | | | 0.00 | 0.00 |
| 02/17/04 | 03/01/04 | Fax Service Assess | 0 | 0 | (15.00) | | 450,837.66 | | | | | 0.00 | 0.00 |
| 02/19/04 | 03/01/04 | Escrow Only Payme | 0 | 0 | 92.62 | | 450,837.66 | | 92.62 | 92.62 | | 0.00 | 0.00 |
| 02/13/04 | 03/01/04 | Payoff | 0 | 0 | 452,505.14 | 450,837.66 | 0.00 | 1,667.48 | | 92.62 | | 0.00 | 0.00 |

Loanhlst.rpt

09/01/2004  2:36:05PM

# PCFS Mortgage Resources
## Loan History Summary

Page #2

**Loan ID**
0000779213

**Borrower Name**
RONALD J POMYKALA

| Trans Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Balance | Late Charge Amount | Balance | Assist Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/19/04 | 03/01/04 | Prepayment Penal | 0 | 0 | 8,453.21 | | 0.00 | 8,453.21 | | 92.62 | | 0.00 | |
| 02/19/04 | 03/01/04 | Release Fee | 0 | 0 | 15.00 | | 0.00 | | | 92.62 | | 0.00 | |
| 02/19/04 | 03/01/04 | Payoff Fax Pmt | 0 | 0 | 15.00 | | 0.00 | | | 92.62 | | 0.00 | |
| 02/19/04 | 03/01/04 | Fax Service Pmt | 0 | 0 | 15.00 | | 0.00 | | | 92.62 | | 0.00 | |
| 03/17/04 | 03/01/04 | Escrow Refund | 0 | 0 | (92.62) | | 0.00 | | (92.62) | 0.00 | | 0.00 | |

|  |  |  |  |  |
|---|---|---|---|---|
| $454,721.93 | $41,262.95 | $0.00 | $0.00 | $0.00 |

L P Real Estate LLC    800-706-2396    P.2

THE PROVIDENT BANK
ONE EAST FOURTH STREET
CINCINNATI, OH 45202
PAYEE'S FEDERAL TAX ID NBR: 31-0412725

| 2004 | MORTGAGE INTEREST STATEMENT |

SUBSTITUTE FORM 1098

# 1098 SUMMARY

PLEASE KEEP THIS FORM FOR YOUR RECORDS. DO NOT ATTACH IT TO YOUR INCOME TAX RETURN.

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.
If you received this statement as the payer of record on a mortgage on which there are other borrowers, please furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.
If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1. — Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances.  Caution: If you prepaid interest in the year reported that accrued in full by January 15, 2005, this prepaid interest may be included in box 1.  However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1.  If you are a mortgage credit certificate holder, who can claim the mortgage interest credit, use the information on this form to help figure your credit.  If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.  For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited.  For more information, see Pub. 936, Home Mortgage Interest Deduction.
Box 2. — Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may be deductible. See Pub. 936 or your Schedule A (Form 1040) instructions.

POMYKALA RONALD J
16 CUSHMAN ST
PLYMOUTH MA 02360-4147

THE ACCOUNT NAME AND ADDRESS SHOWN ON THIS MAILER IS DERIVED FROM THE FIRST ACCOUNT NUMBER SHOWN. ALL ACCOUNTS LISTED ARE IDENTIFIED BY THE TAXPAYER ID NUMBER SHOWN TO THE LEFT. IF THERE IS NO TAXPAYER ID SHOWN OR ANY OTHER ERRORS ARE NOTED, PLEASE CALL ONE OF THE NUMBERS LISTED.

YOUR TAXPAYER I.D. NBR:    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

THE INFORMATION IN BOXES 1 AND 2 IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION MAY BE IMPOSED ON YOU IF THE IRS DETERMINES THAT AN UNDERPAYMENT OF TAX RESULTS BECAUSE YOU OVERSTATED A DEDUCTION FOR THIS MORTGAGE INTEREST OR FOR THESE POINTS ON YOUR RETURN.

* CAUTION: THE AMOUNT SHOWN MAY NOT BE FULLY DEDUCTIBLE BY YOU.  LIMITS BASED ON THE LOAN AMOUNT AND THE COST AND VALUE OF THE SECURED PROPERTY MAY APPLY.  ALSO, YOU MAY ONLY DEDUCT INTEREST TO THE EXTENT IT WAS INCURRED BY YOU, ACTUALLY PAID BY YOU AND NOT REIMBURSED BY ANOTHER PERSON.

| ACCOUNT NUMBER | PRINCIPAL BALANCE ON 12/31/04 | ESCROW BALANCE ON 12/31/04 | TAXES PAID THIS YEAR | BOX 1. MORTGAGE INTEREST AND LATE CHARGES RECEIVED FROM BORROWER | BOX 2. POINTS PAID BY PAYER ON PURCHASE OF PRINCIPAL RESIDENCE |
|---|---|---|---|---|---|
| ML   779213 | .00 | .00 | .00 | 15,782.87 | .00 |
| YEARLY TOTALS: | | | .00 | * 15,782.87 | .00 |

FORM CONTROL NUMBER:    89792

# HARGRAVES, KARB, WILCOX & GALVANI, LLP
### Attorneys at Law

Evans J. Carter, P.C.

550 Cochituate Road
P.O. Box 966
Framingham, MA 01701-0966

Telephone (508) 620-0140
Telefax    (508) 875-7728

January 12, 2004

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Robert L. Hoverson, President
Provident Financial Group, Inc.
1 East 4th Street
Cincinnati, Ohio 45204

Chief Executive Officer
PCFS Mortgage Resources Division of
Provident Bank
4221 International Parkway, Suite 150
Atlanta George 30354
and
P.O. Box 741817
Cincinnati, Ohio 45274-1817

Re:    Loan No. 0000779213
       Borrower: Ronald J. Pomykala
       Address: 15 Cushman Street, Plymouth, MA 02760
       <u>DEMAND LETTER PURSUANT TO MASSACHUSETTS
       GENERAL LAWS CHAPTER 93A</u>

Dear Sir/Madam:

Please be advised that I have been retained by the above-named consumer/borrower with regard to the mortgage servicing problems that he has been having with your company. I have opined that your company has committed unfair trade practices in violation of Massachusetts General Laws, Chapter 93A and this letter is being sent to you as a demand in accordance therewith.

To-wit:

1. Mr. Pomykala, since April, 2003 (the servicing having been assigned to your company effective 3/24/03 from New Century Mortgage Corporation) has been sending his monthly mortgage payment by certified mail to your company.

2. For example, the October mortgage payment in an amount of $3,184.23 was received by your company on 10/14/03 in Cincinnati. Annexed hereto is a copy of the postal receipt.

F:\CARTER\POMYKALA\Provident\93A Demand.wpd



EXHIBIT
_E_

**HARGRAVES, KARB, WILCOX & GALVANI, LLP**

*Mr. Robert L. Hoverson, President*
*Provident Financial Group, Inc. and*
*CEO, PCFS Mortgage Resources Division*
*Page No. 2*
*January 12, 2004*

3.    Apparently, your company does not deposit the mortgage payments on the day received even though the October payment was received by your company at 8:35 a.m. on October 14, 2003. Annexed hereto is a copy of the U.S. Postal Service track confirm statement.

4.    For example, the September payment was paid timely but not credited timely so a late charge in an amount of $95.53 was wrongfully assessed but on 9/23/03, Tammy Cole, your collection supervisor, credited and or removed said late charge. Annexed hereto is a copy of her letter.

5.    On 10/15/03, my client received a form "courtesy reminder," dated 10/13/03, which failed to account for his September mortgage payment. A copy is annexed.

6.    The December, 2003 payment was received by your company on 12/8/03 and apparently lost.

7.    My client sent a replacement payment that was received by your company on 12/11/03 but not applied so on 12/23/03, my client made the payment on line electronically and the account should have been paid through the December, 2003 payment but PCFS refused to accept this electronic payment. Accordingly, on 1/6/04, the December and January payments were repaid to avoid further problems.

8.    As of 1/5/04, your records showed the account as having a balance of $9,552.69 (copy enclosed) and it should only have been $3,184.23 (the 1/04 current payment).

9.    I have opined that if your mortgage service company received a mortgage payment before 9:00 a.m. on a given date, that it is obligated by law to post said payment as being received on that date and may not wait until a late charge would be due a day or two later to post the same and that PCFS violated 12 USC Section 2605 in servicing mortgage loans, as well as other statutes and regulations.

10.    As a member of the National Association of Consumer Advocates, I am concerned that your company has a practice of wrongfully delaying the crediting and posting of consumer home mortgage payment checks in order to be able to collect late charges or for other improper purposes.

11.    Demand is herewith made that you not communicate directly with my client, except to send him mortgage loan statements with payment coupons. A violation of this demand would constitute a further unfair trade practice.

I have spent one (1) hour on this matter and my billing rate is $300 per hour, so I would anticipate that when you, in good faith, attempt to resolve this matter, within 30 days, that you include a provision for the payment of my fee.

F:\CARTER\POMYKALA\Provident\03A Demand.wpd

**HARGRAVES, KARB, WILCOX & GALVANI, LLP**

*Mr. Robert L. Hoverson, President*
*Provident Financial Group, Inc. and*
*CEO, PCFS Mortgage Resources Division*
*Page No. 3*
*January 12, 2004*

Your company has continually breached its agreement with Mr. Pomykala so I have instructed him to obtain refinancing from another source.

I would like my client to pay off this mortgage loan serviced by PCFS and I trust that you will waive any prepayment penalties (if any there be) as PCFS has breached its contract and covenant of good faith and fair dealing owed by Mr. Pomykala, so it would be another unfair trade practice to charge him a prepayment penalty that is caused by your violations of law.

Awaiting your response, I remain

Very truly yours,

EVANS J. CARTER

EJC/aec
Enclosures
cc:      Client

Date: 10/21/2003  Time: 5:31:44 PM



**PCFS** Mortgage Resources
A Division of The Provident Bank, an Ohio Banking Corporation
4221 International Pkwy, Suite 15
Atlanta, GA 30354

## MORTGAGE LOAN STATEMENT

BORROWER NAME(S):    RONALD J POMYKALA

PROPERTY ADDRESS:
15 CUSHMAN STREET
PLYMOUTH, MA 02360-0000

| | |
|---|---|
| LOAN NUMBER: | 0000779213 |
| STATEMENT DATE: | 10/17/2003 |
| PRINCIPAL BALANCE: | $452,636.27 |
| ESCROW BALANCE: | $0.00 |
| UNAPPLIED BALANCE: | $0.00 |
| YEAR TO DATE INTEREST: | $17,019.72 |
| YEAR TO DATE TAX: | $0.00 |
| CURRENT INTEREST RATE: | 7.500% |
| PAYMENT DUE DATE: | 11/1/2003 |
| PAYMENT AMOUNT DUE: | $3,184.23 |
| PAST DUE PAYMENTS: | $3,184.23 |
| UNPAID LATE CHARGES: | $95.53 |
| RETURN CHECK FEES: | $0.00 |
| MISCELLANEOUS FEES: | $0.00 |
| TOTAL AMOUNT NOW DUE: | $6,463.99 |
| ON OR AFTER: | 11/16/2003 |
| INCLUDE LATE CHARGE | $6,559.52 |

* The principal balance above is not the total amount required to payoff your loan in full

#BWNHCGJ
RONALD J POMYKALA
15 CUSHMAN STREET
PLYMOUTH, MA 02360-0000

If any of the information shown above is incorrect, please indicate corrections on the back of the payment coupon.

### TRANSACTION ACTIVITY SINCE LAST STATEMENT

| TRANSACTION DESCRIPTION | DUE DATE | TRANSACTION DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL INSURANCE | MISC. OR FEES |
|---|---|---|---|---|---|---|---|---|
| Late Charge Assess | 10/1/2003 | 10/16/2003 | | | | | | -$95.53 |
| Late Charge Waive | 10/1/2003 | 9/24/2003 | | | | | | $95.53 |
| Regular Payment | 9/1/2003 | 9/17/2003 | $95.53 | $353.05 | $2,831.18 | | | |
| Late Charge Assess | 9/1/2003 | 9/18/2003 | $3,184.23 | | | | | -$95.53 |

Dear Mortgagor (s)
PCFS Mortgage Resources values you as a customer. To enable us to provide you with the best possible service, the following information is provided for your review and future reference.
**PAYMENTS**
All payments should be mailed to PCFS Mortgage Resources P.O. Box 741817 Cincinnati, OH 45274-1817. At the bottom of this statement is a payment coupon to be used when making your next monthly payment. The above referenced account number should be written on your check.
**AUTOMATIC PAYMENT WITHDRAW (auto draft)**
To receive information about the benefits of this worry free method of making your mortgage payment, please call our Customer Service Department.
Please notify our Customer Service Department if you are already on auto draft client and you plan to pay your loan in full within 15 days of your due date.
**ADDITIONAL SERVICES**
As a benefit to our customers, PCFS offers a 24 hour access to your account information. You can utilize our dial up Voice Response Unit by dialing 1(800) 969-0703 or you can access our website at www.pcfs.com.
**SERVICER INFORMATION**
PCFS is a debt collector and this is an attempt to collect a debt. Any information obtained will be used for that purpose.
Your loan is serviced by The Provident Bank, an Ohio Banking Corporation. The Provident Bank also does business as The Provident Bank, Inc., PCFS Mortgage Resources, PCFS Financial Services, Inc., Provident Consumer Financial services and PCFS.
PCFS is committed to providing quality customer service.

### SPECIAL MESSAGES

---

### PAYMENT COUPON

PCFS MORTGAGE RESOURCES
PO BOX 741817
CINCINNATI, OH 45274-1817

BORROWER NAME(S):
RONALD J POMYKALA

**DETACH AND RETURN WITH YOUR PAYMENT**

☐ Check the box if name or mailing address is incorrect and complete form on reverse side.

| | |
|---|---|
| LOAN NUMBER: | 0000779213 |
| PAYMENT DUE DATE: | 11/1/2003 |
| PAYMENT AMOUNT DUE: | $3,184.23 |
| PAST DUE PAYMENTS: | $3,184.23 |
| UNPAID LATE CHARGES: | $95.53 |
| RETURN CHECK FEES: | $0.00 |
| MISCELLANEOUS FEES: | $0.00 |
| TOTAL AMOUNT NOW DUE: | $6,463.99 |

$ _____

Additional Principal  $ _____
Additional Escrow  $ _____
Other  $ _____
  $ _____

PCFS MORTGAGE RESOURCES
PO BOX 741817
CINCINNATI OH 45274-1817

# HARGRAVES, KARB, WILCOX & GALVANI, LLP
### Attorneys at Law

Evans J. Carter, P.C.

550 Cochituate Road
P.O. Box 966
Framingham, MA 01701-0966

Telephone (508) 620-0140
Telefax    (508) 875-7728

January 29, 2004

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

Robert L. Hoverson, President
Provident Financial Group, Inc.
1 East 4th Street
Cincinnati, Ohio 45202

Chief Executive Officer
PCFS Mortgage Resources Division of
Provident Bank
4221 International Parkway, Suite 150
Atlanta George 30354

Re:     Loan No. 0000779213
        Borrower: Ronald J. Pomykala
        Address: 15 Cushman Street, Plymouth, MA 02760
        AMENDMENT TO G.L. CHAPTER 93A DEMAND LETTER

Dear Sir/Madam:

Your both have received my demand letter on January 15, 2004 covering the above-stated matter as I have received the green postal receipts.

I have been advised that PCFS is still taking collection actions and this should have ceased!

Please send me a mortgage loan payoff statement as of February 9, 2004 together with a per diem interest rate forthwith, with no prepayment penalty, and the above-stated loan will be paid off in February. I have been authorized by my client to file a class action complaint if this demand is not complied with.

As an aside, my client has never requested the return of any of his checks that were sent to PCFS.

Very truly yours,

EVANS J. CARTER

EJC/aec

**EXHIBIT**

F



**PARTRIDGE SNOW& HAHN LLP**
COUNSELORS AT LAW

February 11, 2004

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Evans J. Carter, Esq.
Hargraves, Karb, Wilcox & Galvani
550 Chochituate Road
P.O. Box 966
Framingham, MA 01701-0966

    Re:    Ronald J. Pomykala, Mass. Gen. Laws Chapter 93A Demand
              PCFS Loan Number 000779213

Dear Mr. Carter:

        We represent The Provident Bank ("Provident") in connection with the demand of Ronald Pomykala dated January 12, 2004 pursuant to Mass. Gen. Laws Chapter 93A. Your letter was received by Provident on January 15, 2004. I have reviewed this matter with Provident, and, based upon such review, Provident respectfully rejects your demand as it is not warranted pursuant to said law.

        According to your letters dated January 12, 2004 and January 29, 2004, Mr. Pomykala has been experiencing various payment posting delays in regard to his mortgage loan account, referenced above, beginning with the September 2003 monthly payment and continuing through the December 2003 monthly payment.

        Mr. Pomykala's monthly payment is due on the first day of every month, but his account is not assessed a late fee unless the payment is received by Provident after the 15th day of a given month, as provided in his mortgage note. Prior to September, 2003, Mr. Pomykala remitted his payments in accordance with the instructions on his monthly billing statement. The monthly "Mortgage Loan Statement" attached to your January 12, 2003 letter clearly states: "All payments should be mailed to PCFS Mortgage Resources, P.O. Box 74817, Cincinnati, OH 45274-1817." These instructions are also consistent with the payment remittance instructions contained in the servicing transfer notices sent to Mr. Pomykala in March and April 2003, when Provident assumed the servicing of Mr. Pomykala's loan from New Century Mortgage Corporation.

        Provident advises that in September 2003, Mr. Pomykala began to remit his monthly payment very close to the end of the 15-day grace period, via certified mail either to Provident's lockbox address (at which there is no individual available to sign the receipt for certified mail, because it is a Post Office Box—a fact that is fairly well known even to the least

---

**EXHIBIT**

G

180 South Main Street · Providence, RI 02903
T: 401-861-8200 · F: 401-861-8210

700 Pleasa[...]
T: 774[...]

101 Federal Street, Suite 1900 · Boston, MA 02110
T: 617-342-7361 · F: 617-722-8266

Evans J. Carter, Esq.
February 11, 2004
Page 2

sophisticated consumer) or to Provident's servicing center in Atlanta. For unknown reasons, commencing with the September 2003 payment, Mr. Pomykala continually refused to send his payments to the lockbox address by regular mail (as required by his monthly billing statement and Provident's instructions to him when Provident acquired servicing of the loan).

When a payment is sent in a manner other than by regular mail to the lockbox address -- and thus contrary to the instructions on the monthly billing statements -- it creates an exception to Provident's usual payment processing. This in turn increases the likelihood of errors, misdirected payments, and, ultimately, lag time in the posting of payments. In sum, Mr. Pomykala's unusual methods of payment starting in September 2003 created the problems for which he seeks now to blame Provident.

Set out below is a month-by-month explanation regarding the posting of payments to Mr. Pomykala's account.

September 2003 payment

According to Provident's records, the subject monthly payment was posted to Mr. Pomykala's account on September 17, 2003. Apparently, Mr. Pomykala remitted this payment via certified mail. Provident determined that it was received by Provident on or before September 15, 2003. To reiterate, the delay in posting to Mr. Pomykala's account was a direct result of the remittance by certified mail to the Post Office Box address. Mr. Pomykala contacted Provident on September 23, 2003, and apparently provided proof of delivery of his monthly payment. On September 24, 2003, the late charge was removed from his account.

October 2003 payment

The October 2003 payment was again remitted via certified mail to the Post Office Box address. The October payment was posted to Mr. Pomykala's account on October 18, 2003. Mr. Pomykala contacted Provident on October 21, 2003, at which time the late fee was again waived. Mr. Pomykala provided evidence to Provident that it was received by Provident on October 14, 2003. On October 22, 2003, Mr. Pomykala was advised to discontinue remitting payments via certified mail to the Post Office Box address. He refused. In an effort to accommodate Mr. Pomykala's continued and unexplained insistence on remitting payments via certified mail, he was advised to send his payment to the physical address of Provident's servicing center in Atlanta, Georgia. (As discussed below, the servicing representative working with Mr. Pomykala believes that she may have failed to provide the suite number with the address at which the payment was to be mailed by Mr. Pomykala, resulting in the November 2003 payment being transferred among various offices in the building until it was eventually tracked down. We are not certain whether she actually failed to do so, and we further note that the suite number is indicated in the monthly billing statements received by Mr. Pomykala.)

The Post Office Box and precise billing address instructions were established to avoid the exact situation in which Mr. Pomykala finds himself. Any deviation from the established billing instructions is likely to result in manual processing, involving multiple

Evans J. Carter, Esq.
February 11, 2004
Page 3

persons, thus increasing the likelihood of delay and/or errors. If Mr. Pomykala had followed the simple remittance instructions, these problems would have been totally avoidable.

November 2003 payment

Notwithstanding that Mr. Pomykala was given the Atlanta address to which to remit the payment, on November 5, 2003, he left a voice mail message to the Provident servicing representative with whom he had spoken during October, 2003 that he was mailing the November payment "per our previous conversation to P.O. Box 741817, Cincinnati, Ohio today."

The servicing representative presumably made the reasonable assumption that Mr. Pomykala was sending the payment to the Post Office Box address by regular mail, as that is what Mr. Pomykala advised her in his voice mail message. A ten-day letter was subsequently mailed to Mr. Pomykala on November 12, 2003 advising that as of the November 10, 2004, the payment due on November 1, 2003 still had not been received. Mr. Pomykala called the servicing representative on November 13, 2003 and advised that, contrary to his prior voicemail message, he had sent a payment to the Atlanta address by certified mail. After ascertaining the address used by Mr. Pomykala, the representative determined that the suite number was not included in the address, resulting in the delay. Mr. Pomykala was then assured that no late fee would be imposed and to disregard to ten-day letter.

At the same time, Provident's representative accommodated Mr. Pomykala to such an extent that she asked him to call her when he deposited future payments in the mail.

As of 10:00 a.m. on November 14, 2003, the U.S. Postal Service's records indicated that the Georgia Post Office had not yet delivered Mr. Pomykala's payment to Provident. Provident's representatives at this time were speaking with the postmasters in Massachusetts and Georgia. Provident again accommodated Mr. Pomykala, told him "not to worry", that Provident would not assess a late fee, and that "we will work it out."

Then Mr. Pomykala called again, on November 17, 2003, to advise that his check had cleared on November 14, 2003 and that he had also received a certified mail receipt showing receipt by Provident on November 10, 2003.

Provident researched this again. Despite inconsistent reports from the U.S. Postal Service, the check was found and posted for November 10, 2003.

December 2003 payment

The December 2003 payment was apparently sent via certified mail to Provident's physical servicing center address in Atlanta. Mr. Pomykala used the wrong zip code, 40354, which apparently is for a location in the State of Kentucky, not Georgia. Although 40354 is not a valid zip code, there is evidence on the records of the U.S. Postal Service of confirmed delivery in zip code area similar to 40354 (i.e., Kentucky) on December 11, 2003. We do not know if there

Evans J. Carter, Esq.
February 11, 2004
Page 4

was actually an erroneous delivery to a location in Kentucky and whether the U.S. Postal Service subsequently delivered the package to Atlanta, but the servicing records indicate evidence of the check being present at Provident's office was on January 7, 2004. We note additional confusion, again attributable to Mr. Pomykala: Mr. Pomykala dated the December 2003 check with the wrong year – December 2004!

Further adding to the confusion is a call from Mr. Pomykala on December 16, 2003, stating that the December 2003 check had been cashed on December 11, 2003. However, he called again on December 22, 2003 and stated that the payment was not posted to the account, meaning that the check he allegedly sent and reported to Provident as cashed had not yet been cashed (and perhaps not yet received) by Provident.

Mr. Pomykala then called back on December 22, 2003, and stated that he would stop payment on the December 2003 check (he never did so) and would make an "on line" payment that day. On December 23, 2003, he called to advise that the payment had been made on the evening of December 22, 2003. On-line payments generally post within 24 to 48 hours, depending upon the time the payment is made. Mr. Pomykala's payment was credited on December 22, 2003, and no late charge was assessed. Importantly, Mr. Pomykala called to complain to Provident that, as of December 29, 2003, the payment amount still had not been withdrawn from his checking account at the local bank. Provident has no control over his account at his local bank. Again, no late fee was charged to Mr. Pomykala.

Mr. Pomykala then called again on January 6, 2004 saying that his "on-line" payment was not processed because he has insufficient funds to cover the check from his local bank account. The missing check then was cleared on January 8, 2004 and the on-line payment (which apparently was subsequently paid from his local bank account) then covered the January 2004 payment that was then due.

According to our records, Mr. Pomykala's February 1, 2004 payment is now due, though it appears he has secured refinancing on his loan with another lender and that his closing is imminent.

In regard to your question regarding Mr. Pomykala's account Loan Summary as shown on the PCFS website as of January 5, 2004, please review the explanation above. The December 2003 and January 2004 payments were posted after the date of the Loan Summary, as discussed above.

In your January 12, 2004 letter, you stated that you attached a "courtesy reminder" dated October 13, 2003, but there was no such attachment to the letter. If you would be so kind as to forward a copy of that "reminder" me, I will be pleased to review it with Provident. The servicing records do indicate that a ten-day letter was mailed to Mr. Pomykala on October 12, 2003, which is an industry standard mortgage servicing practice and helps many borrowers avoid a late charge by reminding them to timely remit payment by the 15th day of the month.

Evans J. Carter, Esq.
February 11, 2004
Page 5

In regard to your January 29, 2004 letter regarding Provident's wrongful continuation of "collection actions" in contravention of your January 12, 2004 letter, allow me to again restate Provident's position that it has not engaged in any such activity since receipt of your letter. If you have specific examples of the activities that Mr. Pomykala is experiencing, please detail these contacts for me so that I may address the precise concerns with Provident.

Lastly, Provident respectfully declines your request to waive Mr. Pomykala's prepayment fee if he pays this loan in full during the prepayment term as more specifically detailed in the related Note. There is no legal basis for this request and we believe, with all due respect, that Mr. Pomykala's problems are self-created. Respectfully, Mr. Pomykala's irrational insistence on sending certified mailings to a Post Office Box address, the erroneous information he provided to Provident on multiple occasions as explained above, his constant complaints to Provident, his constant worry about negative credit bureau reporting, the erroneous statements on multiple occasions that he received foreclosure notices from Provident, his ongoing threats to contact his attorney and to sue Provident as early as October, 2003, and other factors, lead Provident to speculate that perhaps Mr. Pomykala intentionally created the delays and problems about which he now complains. Though we don't yet know his precise circumstances, be advised that in the event that litigation is commenced, we will leave no stone unturned. Provident will not succumb to meritless threats of litigation. Provident believes it has done nothing wrong in this matter and believes that it was more than accommodating to Mr. Pomykala, especially in light of his irrational insistence on sending payments in a method that not only was unauthorized but was completely contrary to his own agreements in his note and mortgage. Accordingly, no offer of settlement is made pursuant to Chapter 93A. Be advised that Provident will vigorously defend itself in any litigation on this matter.

All future correspondence should be directed to my attention. For your information, the enclosed payoff statement was faxed to Attorney John J. Walker at 781-331-6004 on February 6, 2004 in accordance with Mr. Pomykala's request.

We trust that this letter is responsive to your letters. If you have any further questions or concerns, please telephone me.

Sincerely,

Caroline M. Gilroy-Brown

CMG/sa
Enclosure
cc: Elisa Mills, Esq.

726841_1

FEB-09-2004 12:10    PROVIDENT BANK    P.02/02

February 06, 2004

RONALD J POMYKALA
15 CUSHMAN STREET
781-331-6004
PLYMOUTH MA 02360-0000
Your Reference: dxs

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: 0000779213
RONALD J POMYKALA, SS#: 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
15 CUSHMAN STREET
PLYMOUTH, MA 02360-0000
Loan Type: Conventional  FHA/VA Case #:

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit. The payoff is subject to final audit when presented. Any overpayment or refunds will be mailed directly to the borrower. We will prepare the release of our interest in the property after all funds have cleared.

| | |
|---|---|
| Projected Payoff Date | 02/16/2004 |
| Principal Balance | $451,201.88 |
| Interest to 02/16/2004 | $4,210.70 |
| Fees | $ 15.00 |
| Prepayment Penalty | $8,460.04 |
| Release Fees | $ 15.00 |
| Funds owed by Borrower | $0.00 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $463,902.62 |
| Per diem | $ 92.71 |

The next payment due is 02/01/2004. Payments are made by Billing on a Monthly basis. The current interest rate is 7.5000% and the P & I payment is $3,184.23.

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

PCFS Mortgage Resources,
4221 International Parkway
Suite 150
Atlanta, GA 30354
(770) 909-7979
(866) 729-7237

PO1.doc
12/12/2002 1:51 PM

# HARGRAVES, KARB, WILCOX & GALVANI, LLP

**Attorneys at Law**

Evans J. Carter, P.C.

550 Cochituate Road
P.O. Box 966
Framingham, MA 01701-0966

Telephone (508) 620-0140
Telefax    (508) 875-7728

February 27, 2004

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Caroline M. Gilroy-Brown, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Re:   Loan No. 0000779213
Ronald J. Pomykala vs. Provident Financial Group, Inc. and
PCFS Mortgage Resources Division of Provident Bank
2nd Amendment to G.L. Chapter 93A Demand Letter of 1/12/04 and 1/29/04

Dear Ms. Gilroy-Brown:

Receipt is acknowledged of your letter dated February 11, 2004.

My client paid off the above-stated loan, per my instructions, and he paid the prepayment penalty of $8,460.04 under protest as well as paying the February payment of $3,184.23 under protest.

Demand is herewith made for a full and complete accounting and for a refund of these funds as well as any other funds that your client has wrongfully retained. The refund should have been made within 14 days of your client's receipt of the same. I have opined that it is an unfair trade practice to require my client to demand an accounting as this should have been voluntarily provided by your client.

Query, should I be dealing with you or with the National City Corp., as I have read that they purchased both of your clients? Is the Provident name still being used? Should I be dealing with David A. Daberko, the CEO of National City Corp.?

Your letter o February 11, 2004 to me contained numerous factual errors, such as, but not limited to:

F:\CARTER\POMYKALA\Provident\Gilroy Demand ltr.wpd



EXHIBIT

tabbies®

*H*

## HARGRAVES, KARB, WILCOX & GALVANI, LLP

Caroline M. Gilroy-Brown
Page 2
February 27, 2004


**Page 2, 1st Paragraph**: It was not "for unknown reasons," but rather per instructions from Tammy Cole, your client's collections' supervisor, that payments were sent to a new addressed (see annexed memo).

**Page 2, 5th Paragraph:** Ms. Cole did fail to provide a suite number (see memo of 11/13/03).

**Page 3, 3rd Paragraph:** This information is wrong (see memo of 3/3/03).

**Page 3, 5th Paragraph**: This information is wrong. It was delivered on 12/11/03 (see annexed tracking receipt).

**Page 3, 8th Paragraph:** This information is wrong as it was delivered on 12/16/03 (see annexed letter from Hopeville Post Office).

**Page 4, 1st Paragraph**: This information is wrong. It was delivered on 12/11/03 (see annexed tracking receipt.)

**Page 4, 2nd Paragraph.** This check was sent , nothing alleged about it. It was done.

**Page 4, 3rd Paragraph.** This information is wrong. Mr. Pomykala did, in fact, stop payment.

**Page 4, 4th Paragraph.** This information is wrong. Mr. Pomykala never said there was insufficient funds in the account.

I also enclose and incorporate by reference herein the following documents:

a.    Settlement Statement of 2/10/04;
b.    2/10/04 handwritten memo;
c.    2/10/04 phone pay receipt; and
d.    2/10/04 memo from Tammy Cole.

My client was forced to refinance his mortgage because of the shoddy and/or intentionally negligent mortgage servicing (breach of contract) and it cost him closing costs of $8,500 in cash that he paid directly relating to his new mortgage to Consumer Home Mortgage Corporation of America and demand is made for these funds as well as the prepayment penalty of $8,460.04, the funds that have wrongfully been retained and my attorney's fees, costs and interest. Your clients, simply put, do not know how to service a home mortgage loan.

**HARGRAVES, KARB, WILCOX & GALVANI, LLP**

Caroline M. Gilroy-Brown
Page 3
February 27, 2004

I have been authorized to file a class action complaint in Plymouth Superior Court and shall seek treble damages if this matte is not resolved within 30 days of your receipt of this letter.

I remain

Very truly yours,

EVANS J. CARTER

EJC/aec
Enclosures
cc:     Client

F:\CARTER\POMYKALA\Provident\Gilroy Demand ltr.wpd

And Urban Development
OMB Approval No. 2502-0265

| B. Type of Loan | | | |
|---|---|---|---|
| Conv. Univ. | | | |
| | 6. File Number: 03-2194 | 7. Loan Number: 161030786 | 8. Mortgage Ins. Case No.: |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower: | F. Name and Address of Lender: |
|---|---|
| Ronald J. Pomykala, 15 Cushman Street, Plymouth, MA 02360 | Consumer Home Mortgage Corporation of America<br>60 McGrath Highway<br>Quincy, Massachusetts, 02169 |

E. Name and Address of Seller:

Seller's TIN#:

| G. Property Location: | H. Settlement Agent: | |
|---|---|---|
| 15 Cushman Street<br>Plymouth, MA 02360 | John J. Walker, Esq. | Tin #: 04-3418638 |
| | Place of Settlement: | I. Settlement Date: |
| | 778 Pleasant Street, Unit 16, Weymouth, MA, 02189 | February 10, 2004 |
| | City/Cnty of Settlement: Weymouth/Norfolk | |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract Sales Price | $0.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower (line 1400) | $12,006.03 | 403. | |
| 104. Payoff 1. PCFS Mortgage Resources | $461,095.97 | 404. | |
| 105. Payoff 2. | | 405. | |
| Adjustments for items paid by borrower in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town taxes            to | | 406. City/Town taxes            to | |
| 107. County Taxes            to | | 407. County Taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. 2003 Unpaid RE Tax | $1,373.89 | 409. | |
| 110. 2004 RE Tax | $4,522.56 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | $478,998.45 | 420. Gross Amount Due to Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $480,000.00 | 502. Settlement Charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1. | |
| 205. | | 505. Payoff 2. | |
| 206. | | 506. to | |
| 207. | | 507. to | |
| 208. | | 508. to | |
| 209. | | 509. to | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County Taxes            to | | 511. County Taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | $480,000.00 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | $478,998.45 | 601. Gross amount due to seller (line 420) | |
| 302. Less Amount paid by/for borrower (line 220) | ($480,000.00) | 602. Less amount paid by/for seller (line 520) | |
| 303. CASH TO BORROWER: | $1,001.55 | 603. CASH FROM SELLER: | |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I and on line 401 (or if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service.
If you are required to file a return, a negligence penalty or other sanction will be imposed on you, if this item is required to be reported and the IRS determines that it has not been reported.
SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 8252 And/or Schedule D (Form 1040). You are required to provide (see Box H) with your correct taxpayer identification number. If you do not provide [see box H] with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller's Signature

**L. Settlement Charges**

| 700. Total Sales/Broker's Commission based on Price $0.00 @ % = | | Paid From Borrowers Funds at Settlement | Paid From Sellers Funds at Settlement |
|---|---|---|---|
| Division of Commission (line 700) as follows: | | | |
| 701. | to | | |
| 702. | to | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **800. Items Payable In Connection With Loan** | POC | | |
| 801. Loan Origination fee | 1 % Consumer Home Mortgage Corporation of America | $4,800.00 | |
| 802. Loan Discount | % | | |
| 803. Appraisal Fee | to | | |
| 804. Credit Report Fee | to | | |
| 805. Processing Fee | to Consumer Home Mortgage Corporation of America | $325.00 | |
| 806. Application Fee | to Consumer Home Mortgage Corporation of America | $60.00 | |
| 807. Funding Fee | to Consumer Home Mortgage Corporation of America | $50.00 | |
| 808. Flood Certification Fee | to Consumer Home Mortgage Corporation of America | $12.00 | |
| 809. Tax Service Fee | to Consumer Home Mortgage Corporation of America | $70.00 | |
| 810. Underwriting Fee | to Consumer Home Mortgage Corporation of America | $515.00 | |
| 811. | to | | |
| 812. | to | | |
| 813. | to | | |
| 814. | to | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | |
| 901. Interest from | 2/17/2004 to 3/1/2004 @ 81.9300 /day 13 Days | $1,065.09 | |
| 902. Mortgage insurance premium for | mo. to | | |
| 903. Hazard insurance premium for | 1 yrs. to Flaherty Insurance Agency, Inc. | $1,021.00 | |
| 904. Flood Insurance | yrs. to | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Hazard Insurance | months @ per month | | |
| 1002. Mortgage Insurance | months @ per month | | |
| 1003. City property taxes | 3 months @ $480.90 per month | $1,442.70 | |
| 1007. | months @ per month | $0.00 | |
| 1008. Aggregate Accounting Adjustment | | ($0.01) | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | MacInnis Title | $219.00 | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | John J. Walker, Esq. | $600.00 | |
| ( includes the above items Numbers: 1101,1106) | | | |
| 1108. Title insurance to | Fidelity National Title Insurance Company | $1,200.00 | |
| ( Title Insurance Commission to Title Agent: $840.00) | | | |
| 1109. Lender's coverage $480,000.00 L Prem: $1,200.00 | Endorsement $0.00 | | |
| 1110. Owner's coverage $0.00 O Prem: | | | |
| 1111. Obtain Municipal Lien Certificate | to John J. Walker, Esq. | $25.00 | |
| 1112. | to | | |
| 1113. | to | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording fees: Deed ; Mortgage $177.00 ; Releases $76.00 | | $253.00 | |
| 1202. Recording fees: Deed ; Mortgage | | | |
| 1203. State tax/stamps: Deed $0.00 ; Mortgage | | | |
| 1204. Record Municipal Lien Certificate | to Plymouth County Registry of Deeds | $67.00 | |
| 1205. Record Release of Attachment | to Plymouth County Registry of Deeds | $77.00 | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey to DeCelle Engineering | to | $125.00 | |
| 1302. Pest inspection | to | | |
| 1303. Overnight/Courier Fees | to John J. Walker, Esq./UPS/Deadline Delivery | $71.75 | |
| 1304. | to | | |
| 1305. | to | | |
| 1306. | to | | |
| 1307. Wire Fee | to Weymouth Bank | $7.50 | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502 Section K)** | | $12,006.03 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrowers                                                                                 Sellers

Ronald J. Pomykala

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent: _____                                                Date: February 10, 2004
        John J. Walker

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title

EXHIBIT 1

**Main Identity**                                                          ~~Page 1 o~~

| | |
|---|---|
| **From:** | "Tammy Cole" <tcole@ilcinc.com> |
| **To:** | <ron.pomykala@verizon.net> |
| **Sent:** | Wednesday, November 05, 2003 11:34 AM |
| **Subject:** | Re: Voice Mail This Morning |

I'm presuming it is the address provided to you with your statement. This is a lockbox and as a result is an automated payment processing. Something I can't really assist in tracking, should there be a delay.

~~[redacted text]~~ the ~~[redacted]~~ 4224 ~~International Airway Atlanta~~ ~~[redacted]~~ involved ~~[redacted]~~ ~~[redacted] and done via the front desk.~~

**# 1**

As it has already been sent, we'll give a whirl with the address you did send the payment to.

Thank You!
Tammy Cole
Collections Supervisor
Phone #513-639-1342
Fax #513-639-5713 or
tammy.cole@providentbank.com

>>> "ron.pomykala" <ron.pomykala@verizon.net> 11/5/2003 11:29:33 AM
>>>
Thanks Tammy

Is the address the correct one ??

I used

PCFS Financial Services
PO Box 741817
Cincinnati Ohio  45274-1817

Thanks for your help


Ron Pomykala

----- Original Message -----
From: "Tammy Cole" <tcole@ilcinc.com>
To: <ron.pomykala@verizon.net>
Sent: Wednesday, November 05, 2003 11:12 AM
Subject: Voice Mail This Morning


Ron,
    I received your voice mail this morning and have updated the account
with regards to the payment being sent today.  Wish us luck regarding

EXHIBIT 2

**Main Identity**

**From:** "Tammy Cole" <tcole@ilcinc.com>
**To:** <ron.pomykala@verizon.net>
**Sent:** Thursday, November 13, 2003 3:30 PM
**Subject:** Re: certified mail

Ron,

~~I am so sorry Ron, it absolutely correct. The address I was given for Atlanta is missing Suite 450.~~
~~I do not show the funds posted as yet but I have documented the account and recognition. Please be~~
~~advised that a 40 day letter was sent to you 11/12. In light of my error, please disregard the letter. Better yet,~~
~~file it in the trash. I will keep checking your account for the posting of your payment.~~
~~Again, I apologize for the confusion.~~

Thank You!
Tammy Cole
Collections Supervisor
Phone #513-639-1342
Fax #513-639-5713 or
tammy.cole@providentbank.com

>>> "Ron Verizon" <ron.pomykala@verizon.net> 11/13/2003 10:19:26 AM >>>
here is this months payment it was mailed on November 5, 2003 the post office has no record of it. they say
that I needed a suite number.

please help
Ron Pomykala

NOTICE: This message, including all attachments transmitted with it, is for the use of the addressee only. It
may contain proprietary, confidential and/or legally privileged information. No confidentiality or privilege is
waived or lost by any mistransmission. If you are not the intended recipient, you must not, directly or indirectly,
use, disclose, distribute, print or copy any part of this message. If you believe you have received this message
in error, please delete it and all copies of it from your system and notify the sender immediately by reply e-
mail. Thank you.

EXHIBIT #3

Direct Query - Intranet - "Quick" Search                                    Page 1 of 1



| Track/Confirm - Intranet Item Inquiry - Domestic |
|---|

Item: 7001 0360 0003 7044 7945



| Destination | ZIP Code: 40354 | City: | State: |
| Origin | ZIP Code: | City: | State: |

(A PS Form 3849, Delivery Receipt, has not been appended to this record. If the item was recently delivered, the Delivery Receipt may not yet have been scanned.)



Enter Request Type and Item Number:

Quick Search ◉    Extensive Search ○

Item Number:

Inquire on multiple items.

Go to the Product Tracking System Home Page.

Hapeville Station

Attn: Mr. Ron Pomykala

RE: PFC
4221 International Parkway ste 150

Enclosed you will find a copy of the delivered mail piece dated 12/16/2003
I have identified this mail piece as delivered at this unit by the Scanner Id # 861922
however, the zip code was incorrectly entered, once again I apologize for this
inconvenience.

Sincerely,
Deborah Bolton
Hapeville Post Office 30354-9998

2/10/04   12·45 PM    TRIED TO
MAKE A PYMT
   1) THE ONLINE WAS DOWN
   2) CUSTOMER SERVICE WOULD NOT TAKE
      A CHECK

THEY SAID I HAD TO TALK WITH
THE LEGAL DEPT
THEY TRANSFERRED ME TO
RIA MILLER

LEGAL STATUS IS ON
THE SYSTEM WILL NOT ACCEPT

SHE WOULD NOT TAKE MY PYMT

12:59 PM TRANSFERRED ME BACK TO COST SERVIC

1:36 BEEN ON HOLD FOR 37 MINUTES

141 607. TAMMY COLE ON ONHE LINE
SHE TOOK PYMT BY PHONE + SENT
ME A FAX

PCFS MORTGAGE RESOURCES
4221 INTERNATIONAL PKWY, STE.
ATLANTA GA 30354



February 10, 2004

RONALD POMYKALA
15 CUSHMAN ST
PLYMOUTH MA  02360-4147

**PAYMENT DESCRIPTION**

Bank:                                      **COMPASS BANK FOR SAVINGS**
Bank Account Number:                       *******0888
Date of Check:                             **Feb 10, 2004**

Payable To:                                **PCFS MORTGAGE RESOURCES**
Amount of Check for Payment:               **$3184.23**

Customer Reference:                        0000779213

Dear RONALD POMYKALA:

Based on your authorization during our telephone conversation at 01:38 P.M., Feb 10, 2004, we
have initiated an automated clearing house (ACH) debit to withdraw the amount described above
from your specified bank account to make the payment that you requested.

If you have any questions, or wish to make corrections to the information listed above, please
contact Customer Service, at 800-735-4669.

PCFS MORTGAGE RESOURCES
4221 INTERNATIONAL PKWY, STE.
ATLANTA GA 30354

Don't give out your bank account information over the phone unless you know the company and understand why the information is necessary.
**This is not a bill. Do not mail payment.**
**Retain this letter for your records.**

00603590145