UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD J. POMYKALA, individually and on behalf of Class Members,

Plaintiff,

v.

PCFS MORTGAGE RESOURCES DIVISION OF PROVIDENT BANK and PROVIDENT FINANCIAL GROUP, INC.,

Defendants.

CIVIL ACTION NO. 04-11956-RWZ

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In accordance with Local Rule 56.1, the Defendants submit this statement of material facts not in dispute:

1. The defendant, PCFS Mortgage Resources, a division of Provident Bank, is itself a subsidiary of the defendant, Provident Financial Group, Inc. (collectively "Provident"). (Affidavit of Tammy Cole ("Cole Affdvt."), par 1.)

2. Effective March 24, 2003, Provident became the master servicer of the note and mortgage executed by the plaintiff, Ronald J. Pomykala ("Pomykala"), on January 6, 2003 (and originally in favor of New Century Mortgage Corporation). Upon transfer of the servicing to Provident, the mortgage had outstanding principal in the amount of $454,721.93 and had an adjustable rate of interest, then at 7.50%. The mortgage also contained a prepayment rider requiring a prepayment charge if Pomykala paid off the note in the first two (2) years. (Cole Affdvt., par. 2.)

# 2382501_v1

3.      As master servicer, Provident, through its PCFS Mortgage Resources division, was responsible for collecting and accounting for mortgage payments made by the borrower, Mr. Pomykala. <u>At the time Provident became the master servicer, Mr. Pomykala's loan was current and was not in default</u>. Mr. Pomykala's loan was one of thousands of loans which Provident serviced. (Cole Affdvt., par. 3.)

4.      According to Provident's records, a notice was sent to Pomykala, dated March 26, 2003, informing him that the servicing of his mortgage had been transferred to PCFS, a division of Provident. Thereafter, Pomykala would receive monthly mortgage loan statements from Provident directing him to send his monthly mortgage payment to "PCFS Mortgage Resources, P.O. Box 741817, Cincinnati, Ohio." PCFS maintains its payment processing department in Cincinnati and, therefore, mortgagors are directed to send their monthly payments there. (While PCFS maintains its customer service and loss mitigation departments in Atlanta, if payments are sent there they must be forwarded to Cincinnati for processing which could result in delay). (Cole Affdvt., par. 4.)

5.      <u>For the following months of April, May, June, July and August, 2003, Pomykala made such payments to the required address and the payments were properly credited to his account</u>. (Cole Affdvt., par. 5.)

6.      Mr. Pomykala's monthly payment is due on the first day of every month, but his account is not assessed a late fee unless the payment is received by Provident after the 15th day of a given month, as provided in his mortgage note. As noted previously, <u>prior to September, 2003, Mr. Pomykala remitted his payments in accordance with the instructions on his monthly billing statement to "PCFS Mortgage Resources, P.O. Box 74817, Cincinnati, OH 45274-1817."</u> (Cole Affdvt., par. 6.)

7.  Beginning in September 2003, Mr. Pomykala began to remit his monthly payment very close to the end of the 15-day grace period, via certified mail either to Provident's lockbox address (at which there is no individual available to sign the receipt for certified mail, because it is a Post Office Box) or to Provident's servicing center in Atlanta. <u>Commencing with the September 2003 payment, Mr. Pomykala continually refused to send his payments to the lockbox address by regular mail (as required by his monthly billing statement), despite having done so for five (5) previous months</u>. (Cole Affdvt., par. 7.)

8.  When a payment is sent in a manner other than by regular mail to the lockbox address - and thus contrary to the instructions on the monthly billing statements - it creates an exception to Provident's usual payment processing. This in turn increases the potential for a delay in the posting of payments. (Cole Affdvt., par. 8.)

9.  According to Provident's records, the September 2003 monthly payment was posted to Mr. Pomykala's account on September 17, 2003. Apparently, Mr. Pomykala remitted this payment via certified mail. Provident determined that it was received by Provident on or before September 15, 2003. The delay in posting to Mr. Pomykala's account was a direct result of the remittance by certified mail to the Post Office Box address. Mr. Pomykala contacted Provident on September 23, 2003, and apparently provided proof of delivery of his monthly payment. <u>On September 24, 2003, the late charge was removed from his account and none was assessed.</u> (Cole Affdvt., par. 9.)

10. The October 2003 monthly payment was again remitted via certified mail to the Post Office Box address. The October payment was posted to Mr. Pomykala's account on October 18, 2003. <u>Mr. Pomykala contacted Provident on October 21, 2003, at which time the late fee was again waived</u>. Mr. Pomykala provided evidence to Provident that it was received by

Provident on October 14, 2003. On October 22, 2003, Mr. Pomykala was advised to discontinue remitting payments via certified mail to the Post Office Box address. He refused. In an effort to accommodate Mr. Pomykala's continued and unexplained insistence on remitting payments via certified mail, he was advised to send his payment to the physical address of Provident's servicing center in Atlanta, Georgia. (Cole Affdvt., par. 10, 11.)

11.     Notwithstanding that Mr. Pomykala was given the Atlanta address to which to remit the payment, on November 5, 2003, he left a voice mail message to Provident that he was mailing the November payment "per our previous conversation to P.O. Box 741817, Cincinnati, Ohio today." Provident reasonably assumed that Mr. Pomykala was sending the payment to the Post Office Box address by regular mail, as that is what Mr. Pomykala advised in his voice mail message. A ten-day letter was subsequently mailed to Mr. Pomykala on November 12, 2003 advising that as of November 10, 2003, the payment due on November 1, 2003 still had not been received. Mr. Pomykala called on November 13, 2003 and advised that, contrary to his prior voicemail message, he had sent a payment to the Atlanta address by certified mail. After ascertaining the address used by Mr. Pomykala, Provident determined that the suite number was not included in the address, resulting in the delay. <u>Mr. Pomykala was then assured that no late fee would be imposed and to disregard to ten-day letter</u>. (Cole Affdvt., par. 12, 13.)

12.     As of 10:00 a.m. on November 14, 2003, the U.S. Postal Service's records indicated that the Georgia Post Office had not yet delivered Mr. Pomykala's payment to Provident. Provident's representatives at this time were speaking with the postmasters in Massachusetts and Georgia, and again accommodated Mr. Pomykala, told him "not to worry", that Provident would not assess a late fee, and that "we will work it out." Then Mr. Pomykala called again, on November 17, 2003, to advise that his check had cleared on November 14, 2003

and that he had also received a certified mail receipt showing receipt by Provident on November 10, 2003. Despite inconsistent reports from the U.S. Postal Service, the check was found and posted for November 10, 2003. <u>With respect to the November 2003 payment, Mr. Pomykala was never charged with any late fee</u>. (Cole Affdvt., par. 14.)

13. The December 2003 payment was sent via certified mail to Provident's physical servicing center address in Atlanta. Mr. Pomykala used the wrong zip code, 40354, which apparently is for a location in the State of Kentucky, not Georgia. Although 40354 is not a valid zip code, there is evidence on the records of the U.S. Postal Service of confirmed delivery in zip code area similar to 40354 (i.e., Kentucky) on December 11, 2003. Thereafter, the U.S. Postal Service subsequently delivered the package and the check was present at Provident's Atlanta office on January 7, 2004. (Cole Affdvt., par. 15, 16.)

14. Mr. Pomykala then called on December 22, 2003, and stated that he would stop payment on the December 2003 check (he never did so) and would make an "on line" payment that day. On December 23, 2003, he called to advise that the payment had been made on the evening of December 22, 2003. On-line payments generally post within 24 to 48 hours, depending upon the time the payment is made. Mr. Pomykala's payment was credited on December 22, 2003, and no late charge was assessed. Importantly, Mr. Pomykala called to complain to Provident that, as of December 29, 2003, the payment amount still had not been withdrawn from his checking account at the local bank. Provident has no control over his account at his local bank. <u>Again, no late fee was charged to Mr. Pomykala with respect to his December 2003 payment</u>. (Cole Affdvt., par. 17.)

15. Mr. Pomykala then called again on January 6, 2004 saying that his "on-line" payment was not processed because he had insufficient funds to cover the check from his local

bank account. The missing check then was cleared on January 8, 2004 and the on-line payment (which apparently was subsequently paid from his local bank account) then covered the January 2004 payment that was then due. (Cole Affdvt., par. 18.)

16.     Therefore, as of January, 2004 -- notwithstanding the confusion caused by Mr. Pomykala from his refusing to mail mortgage payments to the proper address in Cincinnati, Provident had (i) responded promptly to every inquiry, (ii) had applied all mortgage payments, and (iii) had not charged him any late fees or other sums beyond his usual monthly mortgage amount. Therefore, Pomykala had not suffered damages or loss as a result of Provident's alleged failure to past payments on the date received. (Cole Affdvt., par. 19.)

17.     Mr. Pomykala, thereafter, sought a waiver from Provident of the prepayment penalty in the amount of $8,460.04, which waiver was denied by Provident. (Complaint.)

18.     On or about February 10, 2004, Mr. Pomykala refinanced and executed a mortgage in the amount of $480,000 in favor of Consumer Home Mortgage Corporation of America. The mortgage appears to be for a fixed rate loan, since it does not contain an adjustable rate rider. (Complaint.) (Cole Affdvt., par. 20, Exhibit D).

19.     In paragraphs 17, 19(a) and 20 of the First Amended Complaint, Pomykala claims that (i) he paid $467.90 of interest "in advance" per line 901 of the 2003 -Settlement Statement (which amount he claims was never credited to him), and (ii) $78.00 was improperly collected for a tax escrow account service fee, per line 809 of the Settlement Statement, despite that no such escrow account was established. Both of these claims, however, are entirely without merit. (Gabbard Affdvt., par. 3.)

20.     First, Pomykala and his counsel misrepresent line 901 of the 2003 Settlement Statement. (A copy of the Settlement Statement is attached as Exhibit A to the First Amended

Complaint.) The Settlement Statement references the original loan closing which took place on January 6, 2003. Line 901 identifies interest for the 5 days prior to the closing (1/01/03 to 1/06/03) at $93.58 per day in the amount of $467.90. That figure of $467.90 is in <u>parentheses</u> – signifying that it is a credit to the borrower under the column amounts "paid from Borrowers' Funds at Settlement." In other words, the borrower, Pomykala, never paid that amount. (The reason that the sum of $467.90 is listed on the Settlement Statement is because interest on the loan is paid in arrears and, therefore, the borrower's February 1, 2003 payment was applied to the accrued interest for the prior month of January. However, since the loan closed on January 6, Pomykala was entitled to the 5 days credit reflected on Line 901.) The amount of $467.90, therefore, was <u>not</u> interest collected in advance – as alleged by Pomykala in paragraph 17 of the First Amended Complaint. (Gabbard Affdvt., par. 3.)

21.     Moreover, Pomykala's specific allegation in paragraph 17 that the amount of $467.90 was interest in advance for the period "from 1/6/03 – 2/1/03" is blatantly false – and misrepresents line 901. Pomykala and his counsel must or should have known this allegation was false because the period of 1/6/03 – 2/1/03 consists of 25 days, and therefore 25 days at $93.58 per day equals $2,339.50 – rather than the actual and correct amount identified on line 901 of $467.90 (i.e., the 5 days preceding the closing at $93.58/day), which was a credit to the borrower. Pomykala and his counsel could not have made this specific allegation in paragraph 17 without determining that their interpretation of line 901 was mathematically incorrect and could not equal $467.90. (Gabbard Affdvt., par. 3.)

22.     Further, Pomykala and his counsel erroneously allege in paragraph 20 of the First Amended Complaint that the Form 1098 attached as Exhibit D to the First Amended Complaint was incorrect because it failed to identify the $467.90 of interest allegedly paid in advance. This

allegation, too, is utterly flawed because (i) the $467.90 as previously discussed was a credit on the Settlement Statement and <u>not</u> interest paid in advance and (ii) the Form 1098 summary is for the year <u>2004</u> – and is not even applicable to the closing on January 6, 2003. Therefore, Pomykala's allegation in paragraph 20 regarding the Form 1098 is similarly incorrect and utterly without any basis or merit. (Gabbard Affdvt., par. 3.)

23.  With respect to the allegation in paragraph 19(a) of the First Amended Complaint that, despite no real estate tax escrow account being established, Provident nevertheless allegedly collected a $78 fee for such service, per line 809 – Pomykala and his counsel are once again <u>misrepresenting</u> line 809 of the 2003 Settlement Statement. Line 809 identifies a tax service fee, but in reality it is a tax certificate fee. It is a standard practice in connection with a residential mortgage loan for a lender to pay a fee to a third party vendor to confirm the status of outstanding city, county, state or other taxes and liens on residential property. This third party fee is passed on to the mortgagor as part of closing costs. This fee of $78, therefore, had nothing to do with establishing any real estate tax escrow account as Pomykala and his counsel allege. (Gabbard Affdvt., par. 4.)

24.  In paragraphs 18, 19(b) and 22 of the First Amended Complaint, Pomykala alleges that, in connection with the later refinancing, (i) Pomykala made a payment of $3,188.23 in February, 2004 -- which he claims he was not given credit for, and (ii) Provident was paid the amount of $461,929.73 (payoff calculated to 2/29/04), which overpayment was received by PCFS -- and that Provident therefore should have refunded the plaintiff 11 days of interest at $92.64/day, rather than the amount of $92.62 which was ultimately refunded to Pomykala. Pomykala's allegations, however, are again wholly without factual support or merit – and are

<ins>directly contradicted by the 2004 Settlement Statement</ins> from the February 10, 2004 refinancing (which is attached as Exhibit H to the First Amended Complaint). (Gabbard Affdvt., par. 5.)

25. Pomykala did receive full credit for the payment of $3,184.23 which he made by telephone on February 10, 2004. Provident's loan history summary (attached as Exhibit D to the First Amended Complaint) reflects and confirms that such payment was received and applied on February 10, 2004, and which accordingly reduced the balance of the loan. (Gabbard Affdvt., par. 6.)

26. While Pomykala and his counsel repeatedly allege in the First Amended Complaint that, in accordance with the February 17, 2004 payoff letter -- which calculated a payoff as of February 29, 2004, "the refinancing closing attorney paid to defendants $461,929.73 (payoff)" (e.g., paragraph 18) – that is simply <ins>not true</ins>. The Settlement Statement on line 104 specifically identifies a payoff sent to PCFS to PCFS in the amount of <ins>$461,095.97</ins>. Therefore, the closing attorney had already reduced the payoff by deducting the daily interest (since the loan was paid off 10 days prior to February 29, 2004). Thereafter, following Provident's receipt and application of the funds on February 19, 2004, it refunded the plaintiff the $92.62, representing one additional day of interest. Therefore, in fact, notwithstanding the allegations in the First Amended Complaint, (i) Provident properly applied the February 10, 2004 payment, and (ii) Pomykala did not overpay Provident, nor did Provident fail to refund Pomykala any interest he was legitimately owed. Once again, neither Pomykala nor his counsel could have made these allegations in the First Amended Complaint if they had actually reviewed the Settlement Statement (and specifically Line 104) which they attached as an Exhibit. (Gabbard Affdvt., par. 7.)

27. Lastly, in paragraph 21 of the First Amended Complaint, the plaintiff alleges that Provident improperly charged $45.00 in fees in connection with Pomykala's refinancing. These fees included a $15.00 Release Fee (releasing the mortgage), $15.00 fax payoff statement and an additional $15.00 fax service fee. All of these fees are standard and customary in the mortgage servicing industry. (A review of the 2003 Settlement Statement on Lines 1112, 1201 and 1303 reflects that the sellers, from whom Pomykala purchased the house, paid their lender a mortgage discharge fee, release fee and Fed Ex fee.) Pomykala incurred these fees because he voluntarily chose to refinance his mortgage – and he requested that Provident provide him with <u>expedited service</u>, including calculation of the payoff amounts. Because Pomykala or his counsel requested that Provident fax this information immediately to them, rather than by mail, they were charged the standard fee for such expedited service by fax. (Gabbard Affdvt., par. 8.)

28. As a result of the foregoing, Provident submits that there is no factual basis for the additional allegations made in paragraphs 17-22 of the First Amended Complaint. Moreover, Provident submits that many of the allegations are inconsistent with and directly contradicted by, the exhibits which are attached to the First Amended Complaint. Provident is therefore entitled to summary judgment. (Gabbard Affdvt., par. 9.)

          PCFS MORTGAGE RESOURCES DIVISION OF
          PROVIDENT BANK and PROVIDENT
          FINANCIAL GROUP, INC.,

By its attorneys,

*/s/ Lawrence R. Kulig*
Lawrence R. Kulig (BBO #544656)
**HOLLAND + KNIGHT LLP**
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700

Dated:    January 27, 2005

# 2382501_v1    11