UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD J. POMYKALA, individually and on behalf of Class Members,<br><br>Plaintiff,<br><br>v.<br><br>PCFS MORTGAGE RESOURCES DIVISION OF PROVIDENT BANK and PROVIDENT FINANCIAL GROUP, INC.,<br><br>Defendants. | CIVIL ACTION NO. 04-11956-RWZ |

AFFIDAVIT OF TAMMY COLE

Tammy Cole, under oath, deposes and says as follows:

1.  I am a collections supervisor with the defendant, PCFS Mortgage Resources, a division of Provident Bank, which itself is a subsidiary of Provident Financial Group, Inc. ("Provident"). I am authorized to and am making this affidavit in support of the defendants' motion for summary judgment. The statements contained herein are made upon personal knowledge and the documents attached hereto are admissible as business records of Provident.

2.  Effective March 24, 2003, Provident became the master servicer of the note and mortgage executed by the plaintiff, Ronald J. Pomykala ("Pomykala"), on January 6, 2003 (and originally in favor of New Century Mortgage Corporation). Upon transfer of the servicing to Provident, the mortgage had outstanding principal in the amount of $454,721.93 and had an adjustable rate of interest, currently at 7.50%. The mortgage also contained a prepayment rider requiring a prepayment charge if Pomykala paid off the note in the first two (2) years. A copy of the prepayment rider is attached as Exhibit A.

# 2306295_v1

advising that as of November 10, 2003, the payment due on November 1, 2003 still had not been received. Mr. Pomykala called me on November 13, 2003 and advised that, contrary to his prior voicemail message, he had sent a payment to the Atlanta address by certified mail. After ascertaining the address used by Mr. Pomykala, I determined that the suite number was not included in the address, resulting in the delay. Mr. Pomykala was then assured that no late fee would be imposed and to disregard to ten-day letter. At the same time, accommodated Mr. Pomykala to such an extent that I asked him to call me when he deposited future payments in the mail.

    14. As of 10:00 a.m. on November 14, 2003, the U.S. Postal Service's records indicated that the Georgia Post Office had not yet delivered Mr. Pomykala's payment to Provident. Provident's representatives at this time were speaking with the postmasters in Massachusetts and Georgia. I again accommodated Mr. Pomykala, told him "not to worry", that Provident would not assess a late fee, and that "we will work it out." Then Mr. Pomykala called again, on November 17, 2003, to advise that his check had cleared on November 14, 2003 and that he had also received a certified mail receipt showing receipt by Provident on November 10, 2003. Provident researched this again. Despite inconsistent reports from the U.S. Postal Service, the check was found and posted for November 10, 2003.

December 2003 payment

    15. The December 2003 payment was apparently sent via certified mail to Provident's physical servicing center address in Atlanta. Mr. Pomykala used the wrong zip code, 40354, which apparently is for a location in the State of Kentucky, not Georgia. Although 40354 is not a valid zip code, there is evidence on the records of the U.S. Postal Service of confirmed delivery in zip code area similar to 40354 (i.e., Kentucky) on December 11, 2003. We do not know if there was actually an erroneous delivery to a location in Kentucky and whether the U.S. Postal

Service subsequently delivered the package to Atlanta, but the servicing records indicate evidence of the check being present at Provident's office was on January 7, 2004.

16. Further adding to the confusion was a call from Mr. Pomykala on December 16, 2003, stating that the December 2003 check had been cashed on December 11, 2003. However, he called again on December 22, 2003 and stated that the payment was not posted to the account, meaning that the check he allegedly sent and reported to Provident as cashed had not yet been cashed (and perhaps not yet received) by Provident.

17. Mr. Pomykala then called back on December 22, 2003, and stated that he would stop payment on the December 2003 check (he never did so) and would make an "on line" payment that day. On December 23, 2003, he called to advise that the payment had been made on the evening of December 22, 2003. On-line payments generally post within 24 to 48 hours, depending upon the time the payment is made. Mr. Pomykala's payment was credited on December 22, 2003, and no late charge was assessed. Importantly, Mr. Pomykala called to complain to Provident that, as of December 29, 2003, the payment amount still had not been withdrawn from his checking account at the local bank. Provident has no control over his account at his local bank. Again, no late fee was charged to Mr. Pomykala.

18. Mr. Pomykala then called again on January 6, 2004 saying that his "on-line" payment was not processed because he has insufficient funds to cover the check from his local bank account. The missing check then was cleared on January 8, 2004 and the on-line payment (which apparently was subsequently paid from his local bank account) then covered the January 2004 payment that was then due.

19. Therefore, as of January, 2004 -- notwithstanding the confusion caused by Mr. Pomykala from his refusing to mail mortgage payments to the proper address, Provident had

responded promptly to every inquiry and had not charged him any late fees or other sums beyond his usual monthly mortgage amounts.

20.  Lastly, Provident respectfully declined the request by Mr. Pomykala to waive the prepayment fee provided for under the prepayment rider. Provident did not require nor force Mr. Pomykala to prepay his mortgage. Mr. Pomykala voluntarily chose to do so. Moreover, it appears that Mr. Pomykala chose to refinance his adjustable rate mortgage with Provident into a fixed rate mortgage. Therefore, his voluntary decision to refinance had nothing to do with Provident. A copy of the new mortgage -- which does not contain an adjustable rate rider -- is attached as Exhibit D.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 1st DAY OF NOVEMBER, 2004.

_____
Tammy Cole

3. As master servicer, Provident, through its subsidiary division PCFS Mortgage Resources, was responsible for collecting and accounting for mortgage payments made by the borrower, Mr. Pomykala. At the time Provident became the master servicer, Mr. Pomykala's loan was current and was not in default. Mr. Pomykala's loan was one of thousands of loans which Provident serviced.

4. According to Provident's records, a notice was sent to Pomykala, dated March 26, 2003, informing him that the servicing of his mortgage had been transferred to PCFS, a division of Provident. Thereafter, Pomykala would receive monthly mortgage loan statements from Provident directing him to send his monthly mortgage payment to PCFS Mortgage Resources, P.O. Box 741817, Cincinnati, Ohio. A copy of such a statement is attached as Exhibit B.

5. For the following months of April, May, June, July and August, 2003, Pomykala made such payments to the required address and the payments were properly credited to his account. (If Pomykala had continued to make such payments in accordance with the written instructions on the billing statements, there would have been no confusion -- and no resulting lawsuit). A copy of Provident's loan history summary for Mr. Pomykala's account is attached as Exhibit C.

6. Mr. Pomykala's monthly payment is due on the first day of every month, but his account is not assessed a late fee unless the payment is received by Provident after the 15th day of a given month, as provided in his mortgage note. As noted previously, prior to September, 2003, Mr. Pomykala remitted his payments in accordance with the instructions on his monthly billing statement. The monthly "Mortgage Loan Statement" attached to his January 12, 2003 letter clearly states: "All payments should be mailed to PCFS Mortgage Resources, P.O. Box 74817, Cincinnati, OH 45274-1817."

7. Beginning in September 2003, Mr. Pomykala began to remit his monthly payment very close to the end of the 15-day grace period, via certified mail either to Provident's lockbox address (at which there is no individual available to sign the receipt for certified mail, because it is a Post Office Box) or to Provident's servicing center in Atlanta. For unknown reasons, commencing with the September 2003 payment, Mr. Pomykala continually refused to send his payments to the lockbox address by regular mail (as required by his monthly billing statement), despite having done so for five (5) previous months.

8. When a payment is sent in a manner other than by regular mail to the lockbox address - and thus contrary to the instructions on the monthly billing statements - it creates an exception to Provident's usual payment processing. This in turn increases the likelihood of errors, misdirected payments, and, ultimately, lag time in the posting of payments. In sum, Mr. Pomykala's unusual methods of payment starting in September 2003 created the problems for which he seeks now to blame Provident. Set out below is a month-by-month explanation regarding the posting of payments to Mr. Pomykala's account.

September 2003 payment

9. According to Provident's records, the subject monthly payment was posted to Mr. Pomykala's account on September 17, 2003. Apparently, Mr. Pomykala remitted this payment via certified mail. Provident determined that it was received by Provident on or before September 15, 2003. To reiterate, the delay in posting to Mr. Pomykala's account was a direct result of the remittance by certified mail to the Post Office Box address. Mr. Pomykala contacted Provident on September 23, 2003, and apparently provided proof of delivery of his monthly payment. On September 24, 2003, the late charge was removed from his account.

October 2003 payment

10. The October 2003 payment was again remitted via certified mail to the Post Office Box address. The October payment was posted to Mr. Pomykala's account on October 18, 2003. Mr. Pomykala contacted Provident on October 21, 2003, at which time the late fee was again waived. Mr. Pomykala provided evidence to Provident that it was received by Provident on October 14, 2003. On October 22, 2003, Mr. Pomykala was advised to discontinue remitting payments via certified mail to the Post Office Box address. He refused. In an effort to accommodate Mr. Pomykala's continued and unexplained insistence on remitting payments via certified mail, he was advised to send his payment to the physical address of Provident's servicing center in Atlanta, Georgia. The suite number in Atlanta is indicated in the monthly billing statements received by Mr. Pomykala.) See top left corner of Exhibit B.

11. The Post Office Box and precise billing address instructions were established to avoid the exact situation in which Mr. Pomykala finds himself. Any deviation from the established billing instructions is likely to result in manual processing, involving multiple persons, thus increasing the likelihood of delay and/or errors. If Mr. Pomykala had followed the simple remittance instructions, these problems would have been totally avoidable.

November 2003 payment

12. Notwithstanding that Mr. Pomykala was given the Atlanta address to which to remit the payment, on November 5, 2003, he left a voice mail message to Provident that he was mailing the November payment "per our previous conversation to P.O. Box 741817, Cincinnati, Ohio today."

13. I reasonably assumed that Mr. Pomykala was sending the payment to the Post Office Box address by regular mail, as that is what Mr. Pomykala advised in his voice mail message. A ten-day letter was subsequently mailed to Mr. Pomykala on November 12, 2003