UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD J. POMYKALA, individually and on behalf of Class Members,<br><br>Plaintiff,<br><br>v.<br><br>PCFS MORTGAGE RESOURCES DIVISION OF PROVIDENT BANK and PROVIDENT FINANCIAL GROUP, INC.,<br><br>Defendants. | CIVIL ACTION NO. 04-11956-RWZ |

## AFFIDAVIT OF STEPHEN GABBARD

Stephen Gabbard, under oath, deposes and says as follows:

1.      I am a Vice President with The Provident Bank - PCFS Mortgage Resources Division. The Provident Bank is a subsidiary of Provident Financial Group, Inc. ("Provident"). I am authorized to and am making this affidavit in support of the defendants' motion for summary judgment.

2.      This affidavit supplements the affidavit of Tammy Cole. The statements contained herein are made upon personal knowledge or my review of Provident's loan file and the plaintiff, Ronald J. Pomykala's ("Pomykala"), First Amended Complaint, together with the exhibits attached thereto. For the reasons stated herein, the allegations and claims which Pomykala seeks to add by way of his First Amended Complaint are either false or without merit (and in some instances are directly contradicted by the exhibits which are attached to his First Amended Complaint).

3.      More specifically, in paragraphs 17, 19(a) and 20 of the First Amended Complaint, Pomykala claims that (i) he paid $467.90 of interest "in advance" per line 901 of the

Settlement Statement (which amount he claims was never credited to him), and (ii) $78.00 was improperly collected for a tax escrow account service fee, per line 809 of the Settlement Statement, despite that no such escrow account was established. Both of these claims, however, are entirely without merit.

First, Pomykala and his counsel <u>misrepresent</u> line 901 of the Settlement Statement. (A copy of the Settlement Statement is attached as Exhibit A to the First Amended Complaint and attached as Exhibit A hereto for reference.) The Settlement Statement references that the original loan closing took place on January 6, 2003. Line 901 identifies interest for the 5 days <u>prior to the closing</u> (1/01/03 to 1/06/03) at $93.58 per day in the total amount of $467.90. That figure of $467.90 is in <u>parentheses</u> – signifying that it is a credit to the borrower under the column amounts "paid from Borrowers' Funds at Settlement." In other words, the borrower, Pomykala, never paid that amount. (The reason that the sum of $467.90 is listed on the Settlement Statement is because interest on the loan is paid in arrears and, therefore, the borrower's payment on February 1, 2003 was applied to the interest for the prior month of January. However, since the loan closed on January 6, Pomykala was entitled to the 5 days credit reflected on Line 901.) The amount of $467.90, therefore, was <u>not</u> interest collected in advance – as alleged by Pomykala in paragraph 17 of the First Amended Complaint.

Moreover, Pomykala's specific allegation in paragraph 17 that the amount of $467.90 was interest in advance for the period "from 1/6/03 – 2/1/03" is blatantly false – and misrepresents line 901. Pomykala and his counsel must or should have known this allegation was false because the period of 1/6/03 – 2/1/03 consists of 25 days, and therefore 25 days at $93.58 per day equals $2,339.50 – rather than the actual and correct amount identified on line 901 of $467.90 (i.e., <u>the 5 days preceding the closing at $93.58/day</u>). Pomykala and his counsel

could not have made this specific allegation in paragraph 17 without determining that their interpretation of line 901 was mathematically incorrect and could not equal $467.90.

Further, Pomykala and his counsel erroneously allege in paragraph 20 of the First Amended Complaint that the Form 1098 attached as Exhibit D was incorrect because it failed to identify the $467.90 of interest allegedly paid in advance. This allegation, too, is patently incorrect because (i) the $467.90 as previously discussed was a credit on the Settlement Statement and <u>not</u> interest paid in advance and (ii) the Form 1098 summary is for the year <u>2004</u> – and is not even applicable to the closing on January 6, 2003. Therefore, Pomykala's allegation in paragraph 20 that the Form 1098 is inaccurate and without any basis or merit.

4.    Second, with respect to the allegation in paragraph 19(a) of the First Amended Complaint that, despite no real estate tax escrow account being established, Provident nevertheless allegedly collected a $78 fee for such service, per line 809 – Pomykala and his counsel are once again <u>misrepresenting</u> line 809 of the 2003 Settlement Statement.

Line 809 identifies a "tax service fee". This fee is more commonly known in the residential mortgage lending industry as a 'tax certification fee', because it is a fee assessed by a third party vendor to research and <u>certify</u> the status of outstanding city, county, state or other taxes and assessments on residential property prior to the closing. This third party fee is passed on to the mortgagor as part of closing costs in the same way as title search fees are passed on to the mortgagor. This fee of $78, therefore, had nothing to do with establishing any real estate tax escrow account, as Pomykala and his counsel allege.

5.    In paragraphs 18, 19(b) and 22 of the First Amended Complaint, Pomykala alleges that, in connection with the later refinancing, (i) Pomykala made a payment of $3,188.23 in February, 2004 -- which he claims he was not given credit for, and (ii) Provident was paid the

amount of $461,929.73 (payoff calculated to 2/29/04), which overpayment was received by PCFS -- and that Provident therefore should have refunded the plaintiff 11 days of interest at $92.64/day, rather than the amount of $92.62 which was ultimately refunded to Pomykala.

Pomykala's allegations, however, are again wholly without factual support or merit – and are <u>directly contradicted by Pomykala's own Settlement Statement</u> from the February 10, 2004 refinancing (which is attached as Exhibit H to the First Amended Complaint and attached as Exhibit B hereto for reference).

6.  First, Pomykala did receive full credit for the payment of $3,184.23 which he made by telephone on February 10, 2004. Provident's loan history summary (attached as Exhibit D to the First Amended Complaint) reflects and confirms that such payment was received and applied on February 10, 2004, which reduced the balance of the loan.

7.  Similarly, while Pomykala and his counsel repeatedly allege in the First Amended Complaint that, in accordance with the February 17, 2004 payoff letter -- which calculated a payoff as of February 29, 2004, "the refinancing closing attorney paid to defendants $461,929.73 (payoff)" (e.g., paragraph 18) – that is simply <u>not true</u>. The Settlement Statement on line 104 specifically identifies a reduced payoff sent to PCFS in the amount of <u>$461,095.97</u>. Therefore, the closing attorney had already reduced the total payoff amount by deducting the daily interest (since the loan was paid off 10 days prior to February 29, 2004).

Thereafter, following Provident's receipt and application of the funds on February 19, 2004, it refunded the plaintiff the $92.62, representing one additional day of interest.

Therefore, in fact, notwithstanding the allegations in the First Amended Complaint, (i) Provident properly applied the February 10, 2004 payment and (ii) Pomykala did not overpay Provident, nor did Provident fail to refund Pomykala any interest he was legitimately owed.

Once again, neither Pomykala nor his counsel could have made these allegations in the First Amended Complaint if they had actually reviewed the 2004 Settlement Statement (and specifically Line 104) which they attached as an Exhibit to their First Amended Complaint.

8. Lastly, in paragraph 21 of the First Amended Complaint, the plaintiff alleges that Provident improperly charged $45.00 in fees in connection with Pomykala's refinancing.

These fees included a $15.00 Release Fee (releasing the mortgage), $15.00 fax payoff statement and an additional $15.00 fax service fee. All of these fees are standard and customary in the mortgage servicing industry. (In fact, a review of the 2003 Settlement Statement on Lines 1112, 1201 and 1303 reflects that the sellers, from whom Pomykala purchased the house, paid their lender a mortgage discharge fee, release fee and Fed Ex.)

Pomykala incurred these fees because he voluntarily chose to refinance his mortgage – and he requested that Provident provide him with <u>expedited service</u>, including calculation of the payoff amounts. Because Pomykala or his counsel requested that Provident fax this information immediately to them, rather than by mail, they were charged the standard fee for such expedited service by fax.

9. As a result of the foregoing, I respectfully submit that there is no factual basis for the additional allegations made in paragraphs 17-22 of the First Amended Complaint. Moreover, I submit that many of the allegations are inconsistent with and directly contradicted by, the exhibits attached to the First Amended Complaint.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___ DAY OF JANUARY, 2005.

_____
Stephen Gabbard