UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| RONALD J. POMYKALA, individually and on behalf of Class Members,<br>                                     Plaintiff<br><br>v.<br><br>PCFS MORTGAGE RESOURCES DIVISION OF PROVIDENT BANK and PROVIDENT FINANCIAL GROUP, INC.,<br>                                    Defendants |

**Civil Action No. 04-11956 RWZ**

**PLAINTIFF'S MEMORANDUM OF LAW FILED IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Under Local Rule 7.1(B)(2))

The following issues are presented by the plaintiff's First Amended Complaint:

1.  $78.00 was charged to and collected from the plaintiff at the mortgage loan closing held on January 6, 2003. (See line 809 of the Settlement Statement which is Exhibit A annexed to the Complaint.)

In the Affidavit of Stephen Gabbard, as Vice President of Provident, he states that it is not really a "tax service fee," (misnomer) as stated on the settlement statement, but, rather, a "tax certification fee" as the purpose is to certify that the real estate taxes have been paid.

This is a clear duplication of charges and, therefore, an unreasonable charge pursuant to the U.S. Department of Housing and Urban Development's ("HUD") October 15, 2001 Statement of Policy 2001-1 ("SOP"), clarifying HUD's previous informal interpretation regarding the application of Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA") to unearned fees and "up-charges" which interprets under RESPA and prohibits "unreasonable fees" for any settlement services.

It is noteworthy that on line 1111 of the Settlement Statement, $25.00 was charged for

obtaining a "MLC" (Certificate of Municipal Liens) and on line 1205, $16.00 was charged to record the MLC. A lien for municipal taxes is destroyed by payment of the tax due (including any additional taxes due since the lien was created), or by the recording of a municipal lien certificate. M.G.L. Chapter 60, Section 23. This certificate is issued by a tax collector, upon written request and the payment of the statutory charge and, if recorded within 150 days after its date, will discharge the lien for all taxes not shown on the certificate.

Query, why would a "tax service fee" or even a "tax certification fee" be required or be reasonable since the MLC serves this purpose? The defendant fails to address this point in its summary judgment documents. For example, what additional benefit does the mortgagee receive for said fee? The answer is none, but this is another profit for the original mortgagee. Also, it is submitted that this is precisely the type of issue that is appropriate for class action certification since it amounts to millions of dollars to mortgagees but any individual plaintiff's claim are of the so-called "negative value" as the value is only in aggregating all class members claims. It is submitted that, as a matter of law, said $78.00 charge is unreasonable.

2.      <u>No prior accounting has been produced timely or at all</u>.

By letter dated February 27, 2004 (Exhibit H to the Complaint), the plaintiff, by his attorney, sought a "full and complete accounting of the mortgage loan. This was a so-called "qualified written request" pursuant to 12 U.S.C. § 2605(e)(1 & 2), which must be responded to in or within sixty (60) days, and the request receipt acknowledgment in writing within twenty (20) days. A "qualified written request," under RESPA, provides an opportunity to obtain informal discovery and, if the error is correctable, to have the situation resolved without litigation.

Provident first produced a "loan history summary," downloaded from its computer on September 1, 2004 but not produced until December 10, 2004, which was after the scheduling

conference held on November 12, 2004 in this case. The loan history statement fails as an accounting in a number of ways, such as:

    a.    No amortization schedule is shown to confirm the allocation between principal and interest for payments received;

    b.    No dates of when the payments were received and how long after it took to credit them is shown. The summary (which is only a "summary") shows monthly transactions but not <u>when</u> the funds were received.

    c.    No record of payments received before 3/14/03 is shown.

    d.    If as shown on the summary, the loan was paid in full on 2/19/04, why was the overpayment amount not refunded until 3/17/04?

    e.    Why was the $92.6<u>2</u> refund called "escrow refund?" How is the consumer to know that this is an overpayment? The per diem rate stated in the 2/17/04 payoff letter was $92.6<u>4</u>.

    f.    The IRS Form 1098 summary for 2004 shows interest paid on the mortgage loan of $16,762.97 (Exhibit D to Complaint) for the calendar year 2004 but by adding the interest charged from the summary, the total comes to $18,494.87.

    g.    The highlighted portions of the summary show inconsistences and is not factually accurate with regard to many entries. For example, why would a late charge on September 16, 2003 ($95.53) be waived before it is assessed? Why would an NSF fee be assessed (January 2, 2004) if no checks were returned? Why would a website payment fee be charged (January 2, 2004)? Why would payments be unapplied and then applied in January 8, 2004? Why would the summary show, on February 19, 2004, $92.62 escrow paid on page one but on page two the refund was made on March 17, 2004?

It is submitted that, as a matter of law, Provident did not comply with the qualified written request provisions of RESPA for a full and complete accounting.

3.   <u>There is or are material issue(s) of fact that remains to be decided as to whether Provident breached its mortgage servicing obligations and complied with its standard of care.</u>

Ronald J. Pomykala's Affidavit should be compared as to the contradictions with the affidavit of Tammy Cole and clearly and unquestionably establishes issues of material facts with regard to the mortgage servicing.

Some critical points of disputed facts are:

a.   Whether Ms. Cole <u>instructed</u> Mr. Pomykala to make his payments to Atlanta;

b.   Whether Provident posts mortgage payments timely;

c.   Whether Ms. Cole acknowledged problems in Provident's servicing to Mr. Pomykala;

d.   Whether, by Provident's actions (or inactions) covering the handling of Mr. Pomykala's account, Provident should excuse him from paying a prepayment penalty and payoff service charges;

e.   Whether Provident's loan history summary is accurate;

f.   Whether Mr. Cole's Affidavit was filed in bad faith; and

g.   Whether Provident should be estopped to collect prepayment penalties and payoff service fees.

With regard to these factual issues, reasonable inferences should be made to favor the plaintiff which mandates the finding that material facts are in dispute and bars summary judgment for the defendant.

The longstanding principle that "summary judgment is not be turned into trial by affidavit should be applied in this case.

**ARGUMENT**

1.   The defendants allege that the plaintiff has incurred <u>no</u> damages as a result of its actions/inactions.

A review of Paragraph No. 31 of the plaintiff's affidavit breaks down $29,002.45 in actual monetary damages plus his attorney's fees.

2. <u>Count I (RESPA)</u>

   a. The $78.00 tax service fee is a violation of RESPA. See Memorandum of Law filed in support of the plaintiff's cross motion for partial summary judgment that is incorporated herein.

   b. As described in Paragraph No. 2 on page 2 of the Memorandum of Law, the defendants have failed to comply with the plaintiff's qualified written request a required by RESPA.

   c. The mortgage servicing practices by the defendants violates RESPA

3. <u>Count II / FDCPA</u>

The defendant, PCFS Mortgage Resources Division of Provident Bank, is a debt collector within the purview of FDCPA. The factual issues are whether Provident's actions in servicing the mortgage provided a basis for the plaintiff to refinance and <u>not</u> to be charged the prepayment penalty and for payoff fees. It is submitted that the mortgage note was a debt and that by requiring the payment of fees and a prepayment penalty, Provident committed unfair debt collection practices.

4. <u>Counts III, IV, VII, VIII (Tort Based Claims)</u>

Contrary to Provident's argument, it has been shown that the plaintiff has incurred monetary damages as a result of its actions and this is the sole lynchpin of Provident's argument and it must fail.

5. <u>Counts IV, V, IX (Contract Based Claims)</u>

With regard to the contract based counts of the Complaint: Counts IV (Breach of Contract), V (Breach of Covenant of Good Faith and Fair Dealing, VI (Unjust Enrichment), and IX (Disgorgement of Wrongful Profits), the plaintiff has alleged the three (3) essential elements of his claim, namely, (i) that the performed his obligations under the agreement, (ii) that Provident committed a substantial breach of its obligations, and (iii) that the plaintiff suffered damages thereby.

6.      <u>Count X (Unfair Trade Practices, G.L. c. 93A)</u>

Count X of plaintiff's Complaint alleges that Provident engaged in unfair and deceptive conduct in violation of G.L. c. 93A, Section 9.

Demand letters were sent to Provident and Provident made no settlement offers. (See Affidavit of Evans J. Carter, Esq.).

The plaintiff is a consumer within the purview of G.L. Chapter 93A, Section 9 as the transaction in question covers the financing (mortgage) on his personal residence and the servicing of said home mortgage.

Subsection 4 of Section 9 requires the court, if it finds a violation of Section 2, to award, irrespective of the amount in controversy, reasonable attorney fees and costs incurred in connection with the action (even if only actual or nominal damages are awarded) except that attorney fees and costs incurred after the rejection of a reasonable written offer of settlement made within 30 days of the written demand for relief are not recoverable.

Damages may be recoverable under Section 9 even though the plaintiff has not actually sustained a loss. In <u>Leardi v. Brown</u>, 394 Mass. 151, 474 N.W.2d 1094 (1985), for example, damages were recovered where a landlord included an unlawful provision in a printed lease form but never attempted to enforce the unlawful provision against the plaintiff. Under circumstances where there has been an invasion of a legally protected interest but no harm for which actual damages can be awarded, the statute provides for recovery of minimum damages in the amount of $25. <u>Leardi v. Brown</u>, 394 Mass. at 160, 474 N.W.2d at 1101.

The Massachusetts Attorney General's regulation covering consumer related violations of G.L. Chapter 93A states, at 940 CMR 3.16:

> Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A, s. 2 if:

(1) It is oppressive or otherwise unconscionable in any respect; or

(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any facts, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or

(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of the Commonwealth protection; or

(40 Violates the federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2.

Also, a violation of the covenant of good faith and fair dealing can be an unfair trade practice.

First Mutual Bank for Savings v. Bay Street dev. Corp., 18 M. L.W. 1555 (5/7/90).

It is submitted that all of Provident's actions taken together unquestionably constitute willful and knowing unfair trade practices. Pursuant to said statute, the plaintiff is entitled to their reasonable attorney' fees and litigation cots even if his damages are only $1.00.

## CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

RONALD J. POMYKALA,, Plaintiff
By his Attorney

Evans J. Carter, Esq. (BBO # 076560)
Hargraves, Karb, Wilcox & Galvani, LLP
550 Cochituate Road - Post Office Box 966
Framingham, MA 01701-0966
(508) 620-0140

DATED: February 11, 2005